**In re Delane SLAUGHTER and Janis Slaughter, Debtors.**

**Bankruptcy No. 95–30016.**

United States Bankruptcy Court, D. North Dakota.

Sept. 19, 1995.

Wayne Drewes, Trustee, Fargo, ND.

Sheldon A. Smith, Bismarck, ND, for debtors.

### MEMORANDUM & ORDER

WILLIAM A. HILL, Bankruptcy Judge.

Before the Court for consideration is confirmation of the Debtors' First Modified Chapter 13 Plan filed August 14, 1995, incorporating the terms of a stipulation with FmHA also filed August 14, 1995.

This case was commenced on January 5, 1995, with confirmation of an earlier plan continued pending revisions. With a revised plan not forthcoming, FmHA advanced a motion to dismiss on grounds of unreasonable delay. The Debtors' plan, in its latest incarnation came on for hearing on August 15, 1995, the expectation at the time being that all creditor objections had been resolved. The trustee however, raised issue with plan provisions allowing for direct payments by the Debtors to impaired secured creditors, thereby avoiding trustee fees on those payments. The trustee pointedly notes that this is the same scenario played out in *In re Wagner*, 36 F.3d 723 (8th Cir.1994) regarding direct payments in Chapter 12 cases.

Also coming on for hearing in connection with plan confirmation was FmHA's dismissal motion, which was continued pending resolution of the confirmation issue.

### 1.

The Debtors, reside in Mandan, North Dakota and derive approximately 43% of their income from a farming operation situated in Kidder County. The farm income projected at $14,854.00 for the upcoming year, is augmented by stable off-farm employment from which they expect to realize an additional $20,000.00. Total expenses, inclusive of living and farm expenses are projected at $16,613.67, leaving $18,240.00 available for debt service (assuming the income and expense projections are accurate). This sum is nearly consumed by the payment structure provided for in the plan now under consideration. It is with this structure the trustee is in disagreement.

The plan, four and one-half pages in length, provides for direct payment by the debtor of the priority tax claim, all unmodified claims, and additionally, of the impaired secured real property and chattel claims of FmHA. No creditor has objected to receiving direct payment. In the first plan year (1996) these payments total $17,671.00 leaving $569.00 available for unsecureds and trustee fees. Projections for subsequent years paint a similar cash-strapped scenario. If trustee fees were calculated as due and owing on all disbursements, it becomes patently obvious that the plan is incapable of cash flowing. By essentially self administering their plan, at least as regards to payment to priority and secured creditors, the Debtors hope to avoid owing fees on any payments, save for those made to unsecured creditors.

The first paragraph of their plan contains language which is inconsistent with this effort. In this paragraph, the plan states that the Debtors will, "submit all future income to the supervision and control of the trustee during the pendency of this case . . ." This language presents several problems. First of all, in submitting all future income to the trustee, the Debtors presumably leave themselves with no cash resources with which to make direct payments. Secondly, by submission of all cash resources to the trustee, the Debtors become bound by the fee structure set forth in 28 U.S.C. § 586(e)(2). Under this section, the trustee is to collect his statutory fee on "all payments received by [the trustee] under plans in chapter 12 or 13. . . ." Plainly, there appears to the court a stark conflict between the Debtors administrative intentions expressed in later plan provisions and the language of paragraph 1. This ambiguity may have been unintended, but nonetheless puts the court in a quandary since, absent direct payments, the plan is incapable of cash flowing and is thereby confirmable and, direct payments appear to be impossible given the threshold language of paragraph 1.

### 2.

Recognizing the conflict in plan language may have been unintended and further satisfied that the inconsistency can be remed-

ied by a short addendum, the court will nevertheless address the focal issue—that is, whether a debtor in a Chapter 13 case may make direct payments to impaired secured creditors and thereby avoid trustee fees on those payments.

The question has been squarely addressed in the context of Chapter 12 in the recent decision of *In re Wagner*, supra. There the Eighth Circuit, reading section 1225(a)(5)(B)(ii) in conjunction with section 1226(c) held that the bankruptcy code does not forbid plan provisions allowing direct payments by a debtor to impaired secured creditors. Moreover, the Circuit opined that trustee fees under 28 U.S.C. § 586(e) are required only on payments actually received by the trustee. Thus, to the extent a direct payment is made with the trustee uninvolved, no fee is due.

Chapter 12 was fashioned after Chapter 13 and their provisions are in many respects identical. Section 1326(c), identical with section 1226(c), provides for payment by the trustee "[e]xcept as otherwise provided in the plan or in the order confirming the plan". Section 1325(a)(5) is identical with section 1225(a)(5) except for a phrase found in subpart (B)(ii) of section 1225(a)(5) which is not found in subpart (B)(ii) of section 1325(a)(5). Section 1225(a)(5)(B)(ii) refers to "property to be distributed *by the trustee* or the debtor under the plan" whereas, section 1325(a)(5)(B)(ii) refers only to "property to be distributed under the plan". This court does not interpret this omission as indicative of any congressional intent one way or the other as regards to the issue at bar. Indeed, the Sixth Circuit in a 1989 case, entitled *U.S. v. Arnold*, 878 F.2d 925 (6 Cir.1989) expressly held that the two provisions are identical and that they should be similarly construed. In the wake of *In re Wagner*, supra, this court cannot see any statutory prohibition that prevents a chapter 13 debtor from fashioning plan terms providing for direct payments to impaired secured creditors.

Both parties however, acknowledge that such right is not without qualification. Although there is no express statutory prohibition preventing direct payments, the presumption has always been for distribution made by the trustee. S.Rep. No. 889, 95th Cong., 2d Sess. 142 (1978). *See* 11 U.S.C. § 1302(b)(5) (requiring the trustee to "ensure that the debtor commences making timely payments under section 1326."); Janet A. Flaccus, *Bankruptcy Trustee's Compensation: An Issue of Court Control*, 9 BANKR. DEV.J. 39, 55–58 (1992). Deviation from this presumption has been allowed by courts where there appears some significant reason for doing so. *Matter of Foster*, 670 F.2d 478, 486 (5th Cir.1982). In determining whether to confirm a plan providing for direct payments, courts in the past have developed detailed criteria, the foremost of which are: (1) whether the creditor receiving direct payments has the economic incentive and ability to monitor future direct payments; (2) whether the creditor receiving direct payments is capable of taking the requisite action of protecting its interests in the event of a default; (3) the impact of direct payments on plan feasibility and whether, in the case of a Chapter 13 debtor engaged in business, meaningful reorganization is dependent upon direct payment.[1] E.g. *In re Beard*, 45 F.3d 113 (6th Cir.1995); *Matter of Harris*, 107 B.R. 204 (Bankr.D.Neb.1989); *Matter of Pianowski*, 92 B.R. 225 (Bankr.W.D.Mich.1988).

Applying the foregoing criteria to the facts of the case at bar, it appears that direct distribution is being made to taxing authorities and to highly sophisticated secured creditors all of whom are not only competent to monitor the payments but who are also fully capable of foreclosing on the collateral should there be a default. The financial data as provided suggests that if the payments to the affected creditors were made by the trustee and a fee thereby warranted, that fee, calculated at 10% would be $1,700.00 in the first year rendering the plan incapable of cash flowing from the start. Clearly, there is

---

1. Although the instant plan does provide for administration of unsecured payments by the trustee, it is well to point out that in light of criteria one and two, it is unlikely that direct payments to unsecured creditors would ever be approved.

The impetus behind criteria one and two is to engage a trustee in situations where his involvement is essential to ensure that payments are made.

ample financial motivation on the part of the Debtors to seek direct payment in the manner proposed in their plan.

### 3.

In sum, the court concludes that a Chapter 13 plan may, consistent with the code, contain language providing for direct payment of impaired secured claims and thereby avoid the otherwise requisite trustee fee. Further, such provisions are generally proper where the three criteria set forth above are apparent as they are in this case. However, as preliminarily discussed, the Debtors' plan as presently drafted contains a conflict in language which makes direct payment all but impossible and the plan incapable of cash flowing. For this reason, confirmation of the Debtors' First Modified Chapter 13 Plan is **DENIED.**

**SO ORDERED.**