In re Anthony C. BARBER, Heather
L. Barber, Debtors.

Anthony C. BARBER, and Heather
L. Barber, Appellants,

v.

Bill GRIFFIN, Chapter 13
Trustee, Appellee.

Nos. 94–41804–13, 95–4101–SAC.

United States District Court,
D. Kansas.

Jan. 29, 1996.

Joseph I. Wittman, Topeka, KS, for Anthony C. Barber, Heather L. Barber.

William H. Griffin, Topeka, KS, for William H. Griffin.

## MEMORANDUM AND ORDER

CROW, District Judge.

In this appeal, the debtors, Anthony C. and Heather L. Barber, challenge the final decision of the bankruptcy court sustaining the Chapter 13 trustee's objection to the confirmation of their Chapter 13 plan. The debtors' proposed plan provided, *inter alia,* for the direct repayment to the Santa Fe Credit Union of a secured loan on an automobile, rather than repaying the loan through the Chapter 13 plan and administered by the Chapter 13 trustee. Basically, the debtors proposed that provision of their plan so as to avoid the mandatory trustee fee under 28 U.S.C. § 586(e)(2).

### Factual Summary

In 1990 and in 1992 Anthony Barber filed for protection under Chapter 13. Neither of those Chapter 13 plans were successfully completed. After those unsuccessful attempts, Anthony and Heather married. On July 13, 1994, a minor daughter named Taylor was born to them. Taylor was born with serious medical problems. Taylor died on December 21, 1994. As a result of Taylor's medical problems, the debtors incurred substantial medical bills.

In October of 1994, the debtors purchased a 1994 Saturn. The car was purchased through a loan from the Santa Fe Credit Union. Santa Fe Credit Union apparently advanced $10,298.68 for the purchase of the car. An additional $5,113.21 was added to the amount of the loan, representing the sum owed by the debtors on a prior "loanliner" account. The total amount of the loan was $15,411.98. The loan is secured by a lien on the car. The note also bears the signature of a cosigner.

On November 4, 1994, the debtors filed for bankruptcy under Chapter 7. The debtors' "Statement of Intention" indicates that they would reaffirm the debt with the Santa Fe Credit Union. At the time that the debtors filed their petition for bankruptcy, their payments were current on the loan. The debtors have apparently continued to make time-

ly payments on the loan. On "Schedule B–Personal Property," the car is valued at $12,000. On "Schedule D–Creditors Holding Secured Claims," the car is valued at $15,000.

On January 24, 1995, the debtors converted their case from a Chapter 7 to a Chapter 13. The debtors indicate that they chose to convert to Chapter 13 so they could choose their own attorney and pursue any possible causes of action relating to the birth and death of Taylor, rather than relinquishing those decisions to the Chapter 7 trustee's control.

The debtors' plan provided, *inter alia*, for making direct payment to Santa Fe Credit Union in a sum equal to the amount of their monthly payments rather than making payments through the Chapter 13 trustee. The debtors' plan provided for payment of $110 per month to the trustee to pay the other creditors listed in their plan.

The Chapter 13 trustee objected to the proposed provision of the debtors' plan providing for direct payment to Santa Fe Credit Union, arguing that payment "should be through the Chapter 13 plan and administered by the Trustee."

On May 23, 1995, the bankruptcy court conducted a hearing to consider the Chapter 13 trustee's objection. The bankruptcy court sustained the Chapter 13 trustee's objections for two reasons. First, based upon the information available to the bankruptcy court at that time, it appeared that the debtors received a $10,000 advance for the purchase of the car and that the debtor owed the credit union approximately $5,000 before the purchase of the car. Therefore, repaying Santa Fe Credit Union in the amount of $15,000 would in the bankruptcy court's opinion amount to a preference in the amount of $5,000 above all the other secured creditors—a preference not disclosed to the unsecured creditors. The bankruptcy court also noticed that Anthony Barber had failed to mention to Santa Fe Credit Union in the loan application that he had filed for bankruptcy on two prior occasions.

In considering the Chapter 13 trustee's objection, the bankruptcy court noted that the statutory language does not absolutely require the debtor to make payments to a secured creditor through the Chapter 13 trustee. In the bankruptcy court's opinion, the decision whether the debtor could make direct payments to a secured creditor was committed to the discretion of the court. The bankruptcy court noted that the preference is for payments to be made through the trustee and explained the reasons for that preference:

It's certainly administrative efficiency; the ability to track to whom and when and what payment are made; fairness and treatment of the various creditors and there is a greater opportunity for the debtor to fail, should the debtor make his own payments as opposed to making them through the trustee. That's generally so.

In sustaining the Chapter 13 trustee's objection, the bankruptcy court stated: And so I don't find in this case that there's any reason for me to deviate from what the norm is.... A written order sustaining the trustee's objection was entered by the bankruptcy court on May 25, 1995.

Following the bankruptcy court's decision sustaining the Chapter 13 trustee's objection, the debtors filed a motion to reconsider. In that motion, the debtors attempted to answer several of the bankruptcy court's concerns. The debtors noted for the first time that the debt to Santa Fe Credit Union was cosigned and that Heather Barber and the cosigner were the persons filling out the loan application, and therefore Anthony Barber did not make any misrepresentations regarding his prior bankruptcy filings. The fact that the note was cosigned explained the debtors' desire to repay the full amount of the loan. In regard to the bankruptcy court's concerns about monitoring of payments, the debtors stated:

The debtors suggest that they will provide to the trustee a copy of the money order or cashier's check on a monthly basis to prove to the trustee that the payment is being made. Such evidence would provide the trustee will (sic) ample ability to monitor these payments.

In response, the Chapter 13 trustee disputed the culpability of the debtors in regard to any misrepresentation on the loan application

and other documents submitted to Santa Fe Credit Union. In response to the debtors' suggestion that the Chapter 13 trustee could monitor their payments to Santa Fe Credit Union, the trustee stated:

It would be difficult for the Trustee to administer and monitor payments as suggested by the debtor by reviewing copies of money orders or cashier's checks that they would provide to us on a monthly basis. Considering the Trustee has 4,000 cases and all the debtors were allowed to pay in this manner, it would be impossible for the Trustee to keep on top of payments being made. The suggestion is ridiculous and there is no justification for this exception requested by the debtors.

In denying the debtors' motion to reconsider, the bankruptcy court held:

The debtors had proposed to pay directly to a credit union a debt secured by a car they had purchased shortly before filing for bankruptcy. They were current on the debt when they filed. In explaining why they would not be allowed to pay the debt directly rather than through the trustee, the court noted that the debtors were proposing in their plan to pay more to the credit union than the value which they had listed in their schedules for the car, and that their debt to the credit union included more than the loan made for the car. The court concluded there was no reason to deviate from the norm of requiring the debtors to pay the credit union through the trustee. Now, for the first time, the debtors suggest the credit union debt is a co-signed debt. It is inappropriate to assert new facts like this in a motion to reconsider. Furthermore, while the fact the debt is co-signed would make it permissible for the debtors to pay the unsecured portion of the debt ahead of their other unsecured debts, 11 U.S.C.A. § 1322(b)(1), the court does not believe this is a good reason to permit them to pay the debt directly rather than through the trustee.

The court also noted at the hearing that one of the debtors, Mr. Barber, had filed chapter 13 cases in 1990 and 1992 which failed. Those bankruptcies had not been disclosed to the credit union on the application for the car loan. The debtors now suggest this omission was irrelevant because Mr. Barber did not sign the application. Some of the court's remarks at the hearing may have misled counsel about the true impact Mr. Barber's prior bankruptcies had on the court's denial of the relief the debtors were seeking. Those failed chapter 13 cases suggested that he would likely have difficulty making his payments as promised and that normal, rather than less, trustee supervision would be called for in his case. The debtors' new proposal to provide the trustee copies of the money orders or cashiers' checks they would use to pay the credit union might be worthwhile if direct payments to the creditor otherwise appeared to be appropriate, but the court believes it is not sufficient in this case.

As the court indicated at the hearing, this court's general rules that chapter 13 plan payments must be made through the trustee. Exceptions are ordinarily made for current home mortgage payments (though arrearages must go through the trustee), for secured debts that would be paid off before the trustee could begin distributing money, and sometimes for lease payments. The debtors' proposal does not fall within these exceptions, and they have not given the court an adequate reason to create another. Consequently, their motion to reconsider is hereby denied.

Order Denying Debtors' Motion to Reconsider, filed June 13, 1995. The debtors timely appeal the decision of the bankruptcy court.

### Standard of Review

■ On appeal from the bankruptcy court, the district court sits as an appellate court. *See* 28 U.S.C. § 1334(a). The standards generally governing review of the bankruptcy court's decision are well-settled: Findings of fact are not to be set aside unless clearly erroneous; conclusions of law are reviewed *de novo. Virginia Beach Federal Sav. and Loan Ass'n v. Wood,* 901 F.2d 849, 851 (10th Cir.1990); *In re Schneider,* 864 F.2d 683, 685

(10th Cir.1988); *see* Bankruptcy Rules 7052 and 8013.

■ In this case, the bankruptcy court's determination that it would be inappropriate for the Barbers to make direct payments to Santa Fe Credit Union was a matter committed to its sound discretion: "[T]he provisions of Chapter 13 make it clear that the designation of the debtor as such a disbursing agent is very much a matter left to the considered discretion of the bankruptcy court." *Matter of Foster*, 670 F.2d 478, 486 (5th Cir.1982). "Other courts have come to the same conclusion." *In re Gregory*, 143 B.R. 424, 426 (Bkrtcy.E.D.Tex.1992) (collecting cases); *see In re Reid*, 179 B.R. 504, 506 (E.D.Tex.1995) ("[T]he decision to permit a debtor to act as his own disbursing agent is left to the discretion of the bankruptcy judge.").

■ Motions to alter or amend are intended to correct manifest errors of law or fact or to present newly discovered evidence under limited circumstances. *Wieberg v. Resthaven Gardens of Memory*, No. 89–1509–C, 1991 WL 241815, at *1, 1991 U.S.Dist. LEXIS 16013, at *2 (D.Kan. October 29, 1991). The decision to deny the debtors' "motion for reconsideration" was also a matter committed to the sound discretion of the bankruptcy court. *See Buell v. Security General Life Ins. Co.*, 987 F.2d 1467, 1472 (10th Cir.) ("A district court's ruling on a Rule 59(e) motion is reviewed for abuse of discretion."), *cert. denied*, — U.S. ——, 114 S.Ct. 308, 126 L.Ed.2d 255 (1993). In the Tenth Circuit, "[a]n abuse of discretion occurs when the district court's decision is 'arbitrary, capricious or whimsical,' or results in a 'manifestly unreasonable judgment.'" *Moothart v. Bell*, 21 F.3d 1499, 1504–1505 (10th Cir.1994) (*quoting United States v. Wright*, 826 F.2d 938, 943 (10th Cir.1987)).

## ISSUE

Whether the bankruptcy court abused its discretion in sustaining the Chapter 13 trustee's objection to the provision of the debtors' proposed Chapter 13 plan providing for direct payment to Santa Fe Credit Union, a secured creditor?

## Analysis

A brief overview of Chapter 13 and the relevant statutes is necessary to understand the issue presented in this case.

Chapter 13 of the Bankruptcy Code, 11 U.S.C. §§ 1301–1330, permits "individuals with regular income" who carry a relatively small debt load to propose a plan providing for the repayment of all or a portion of the claims against the debtor out of the debtor's future income over a period not to exceed five years from the date of the plan's confirmation.

*Matter of Aberegg*, 961 F.2d 1307, 1308 (7th Cir.1992) (footnotes omitted). " 'Chapter 13 is designed to serve as a flexible vehicle for the repayment of part or all of the allowed claims of the debtor. Section 1322 emphasizes that purpose by fixing a minimum of mandatory plan provisions.' " *Id.* (*quoting* S.Rep.No. 989, 95th Cong., 1st Sess. 141 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5927).

By statute, the Chapter 13 plan must contain three provisions:

(1) provide for the submission of all or such portion of future earnings or other future income of the debtor to the supervision and control of the trustee as is necessary for the execution of the plan;

(2) provide for the full payment, in deferred cash payments, of all claims entitled to priority under section 507 of this title, unless the holder of a particular claim agrees to a different treatment of such claim; and

(3) if the plan classifies claims, provide the same treatment for each claim within a particular class.

11 U.S.C. § 1322(a). "Section 1322(b) also contains certain discretionary provisions which may be included in the plan." *In re Reid*, 179 B.R. at 507.

The manner of making payments under the Chapter 13 is found at § 1326, which provides:

(a)(1) Unless the court orders otherwise, the debtor shall commence making the payments proposed by a plan within 30 days after the plan is filed.

(2) A payment made under this subsection shall be retained by the trustee until confirmation or denial of confirmation of a plan. If a plan is confirmed, the trustee shall distribute any such payment in accordance with the plan as soon as practicable. If a plan is not confirmed, the trustee shall return any such payment to the debtor, after deducting any unpaid claim allowed under section 503(b) of this title.

(b) Before or at the time of each payment to creditors under the plan, there shall be paid—

(1) any unpaid claim of the kind specified in section 507(a)(1) of this title; and

(2) if a standing trustee appointed under section 586(b) of title 28 is serving in the case, the percentage fee fixed for such standing trustee under section 586(e)(1)(B) of title 28.

(c) Except as otherwise provided in the plan or in the order confirming the plan, the trustee shall make payments to creditors under the plan.

Appointment of persons to serve as standing Chapter 12 or 13 trustees is provided for in 28 U.S.C. § 586(b). Title 28, § 586 also provides for the manner of compensating the trustee:

(e)(1) The Attorney General, after consultation with a United States trustee that has appointed an individual under subsection (b) of this section to serve as standing trustee in cases under chapter 12 or 13 of title 11, shall fix—

(A) a maximum annual compensation for such individual consisting of—

(i) an amount not to exceed the highest annual rate of basic pay in effect for level V of the Executive Schedule; and

(ii) the cash value of employment benefits comparable to the employment benefits provided by the United States

to individuals who are employed by the United States at the same rate of basic pay to perform similar services during the same period of time; and

(B) a percentage fee not to exceed—

(i) in the case of a debtor who is not a family farmer, ten percent; or ...

(2) Such individual shall collect such percentage fee from all payments received by such individual under plans in the cases under chapter 12 or 13 of title 11 for which such individual serves as standing trustee.

See generally In re BDT Farms Inc., 21 F.3d 1019 (10th Cir.1994) (discussing § 586); In re Schollett, 980 F.2d 639 (10th Cir.1992) (reasonableness of standing trustee's fee is not subject to judicial review).

■ Based upon a plain reading of § 1326(c),[1] Congress clearly envisioned "the possibility of direct disbursements 'under the plan' by the Chapter 13 debtor." Matter of Foster, 670 F.2d at 486; see Matter of Aberegg, 961 F.2d at 1309 (The language of the bankruptcy code "has been uniformly interpreted as giving bankruptcy courts the discretion to permit debtors to make payment directly to some secured creditors, provided that the plan meets all the confirmability requirements set forth in § 1325(a)."); In re Slaughter, 188 B.R. 29, 31 (Bkrtcy.D.N.D. 1995) ("[T]his court cannot see any statutory prohibition that prevents a chapter 13 debtor from fashioning plan terms providing for direct payments to impaired secured creditors."); but see In re Fulkrod, 973 F.2d 801 (9th Cir.1992) ("[W]e now hold that Chapter 12 of the bankruptcy code does not authorize a debtor to make payments directly to creditors with claim modified by a plan of reorganization in order to avoid paying the bankruptcy trustee the statutory fee under 28 U.S.C. § 586.").[2] "Nonetheless, § 1326[ (c) ] also 'makes it clear that the Chapter 13

1. In 1984, § 1326 was amended. Subsection (c) was formerly designated as subsection (b). The redesignation effected no change in the language of the subsection. For simplicity, the court will simply refer to that subsection throughout this opinion as it now exists—as subsection (c).

2. The Sixth and Eighth Circuits have reached an opposite conclusion in the Chapter 12 context.

See In re Beard, 45 F.3d 113, 120 (6th Cir.1995) ("[A] Chapter 12 debtor may bypass the standing trustee and directly pay the secured portion of an unsecured debt to the creditor."); In re Wagner, 36 F.3d 723 (8th Cir.1994) (bankruptcy code does not preclude Chapter 12 plans from allowing debtors to make direct payments to impaired secured creditors).

trustee is normally to make distributions to creditors of the payments made under the plan by the debtor.'" *Matter of Foster,* 670 F.2d at 486 (*quoting* S.Rep. No. 989, 95th Cong., 1st Sess. 142 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5928); *see In re Slaughter,* 188 B.R. at 31 ("Although there is no express statutory prohibition preventing direct payments, the presumption has always been for distribution made by the trustee."); *In re Reid,* 179 B.R. at 507 ("[T]he general rule requires that debts provided for in a Chapter 13 plan be paid through the Chapter 13 Trustee.").[3]

Generally, courts have permitted debtors to make direct payments to creditors under limited or unique circumstances:

> Deviation from [the] presumption [for distributions to be made by the trustee] has been allowed by courts where there appears some significant reason for doing so. *Matter of Foster,* 670 F.2d 478, 486 (5th Cir.1982). In determining whether to confirm a plan providing for direct payments, courts in the past have developed detailed criteria, the foremost of which are: (1) whether the creditor receiving direct payments has the economic incentive and ability to monitor future direct payments; (2) whether the creditor receiving direct payments is capable of taking the requisite action of protecting its interests in the event of a default; (3) the impact of direct payments on plan feasibility and whether, in the case of a Chapter 13 debtor engaged in business, meaningful reorganization is dependent upon direct payment.

*Id.* (citations omitted).

In *In re Gregory,* the court discussed similar and additional concerns which the bankruptcy court may consider in determining whether the debtor should act as a disbursing agent:

> The Trustee argues that the integrity of the trustee system requires the receipt of the statutory commission for the operation of the system. Indeed, numerous courts

have recognized that decisions to allow a debtor to act as a disbursing agent for plan payments, thereby endangering the payment of fees and commissions necessary to the operation of the trustee system, is a significant concern. *Matter of Harris,* 107 B.R. 204, 207 (Bankr.D.Neb.1989); *[In re] Wright, supra* [82 B.R. 422] at 423 [Bankr. W.D.Va.1988]; *In re Gaskin,* 79 B.R. 388, 389 (Bankr.C.D.Ill.1987). The Trustee also argues that, absent his control of the receipt and disbursement of the payment to IRS [which held a priority unsecured claim], he will never be in a position to certify to the court that payments under the plan are complete and that all priority claims are paid.

Additional considerations entering into a court's decision whether to allow a debtor to act as a disbursing agent for certain payments as opposed to mandating that all payments be made through the trustee include:

> Whether the debt is modified by the plan, the sophistication of the creditor, the ability and incentive of the creditor to monitor payments, whether the debt is a commercial or consumer debt, the ability of the debtor to reorganize absent direct payments, whether the payment cannot be delayed, the number of payments proposed to satisfy a claim, whether a direct payment by debtor under the plan will impair the trustee's ability to perform his/her standing trustee duties, and unique or special circumstances of a particular case.

*Matter of Harris,* 107 B.R. 204, 207 (Bankr.D.Neb.1989). Clearly, a court must balance numerous considerations before permitting a debtor to act as a disbursing agent. This court is convinced that deviation from the normal periodic payments to the trustee and disbursal of those payments by the trustee should only be departed from when the debtor can

---

3. "Who actually disburses the debtor's payments is of great interest to the trustee, because the trustee is entitled to his statutory commission only on the funds that he actually receives from the debtor pursuant to the Chapter 13 plan. 28 U.S.C. § 586(e)(2). The trustee collects no commission on funds that the debtor disburses directly to a creditor." *Matter of Aberegg,* 961 F.2d at 1309.

demonstrate a significant reason for doing so.

143 B.R. at 427.

■ The court concludes that the bankruptcy court did not abuse its discretion in sustaining the trustee's objection to debtors' plan. In sustaining the trustee's objection, the bankruptcy court clearly understood that it had the discretion to permit the debtors to make direct payments under the plan, but determined that the debtors had made an insufficient showing to warrant deviation from the usual practice of the trustee making payments under the plan. In reaching that decision, the bankruptcy court considered many of the factors considered by other courts in determining whether it was appropriate to permit debtors to make direct payments to secured creditors under their Chapter 13 plan. The bankruptcy court considered the specific facts of this case as well as the potential impact of such a provision on the effective administration of Chapter 13 plans in general. Nothing argued by the debtors demonstrates that the bankruptcy court abused its discretion in this case. *See In re Genereux,* 137 B.R. 411, 413 (Bkrtcy. W.D.Wash.1992) ("I am not persuaded that the Debtor's interest in avoiding the Trustee's fee outweighs the interest of debtors (and creditors) generally in an effective and efficient Chapter 13 system.").

■ Nor did the bankruptcy court abuse its discretion in denying the debtors' motion to reconsider. The bankruptcy court correctly observed that it is inappropriate to assert facts or arguments which the movant could have presented in the initial hearing for the first time in a motion to reconsider. "[A] party's failure to present his strongest case in the first instance does not entitle him to a second chance in the form of a motion to amend." *Paramount Pictures Corp. v. Video Broadcasting Sys., Inc.,* No. 89–1412–C, 1989 WL 159369, at *1, 1989 U.S.Dist. LEXIS 15684, at *2 (D.Kan. December 15, 1989); *see Voelkel v. General Motors Corp.,* 846 F.Supp. 1482, 1483 (D.Kan.) (motion to alter or amend should not be viewed as a second opportunity "for the losing party to make its strongest case or to dress up arguments that previously failed."), *aff'd,* 43 F.3d 1484 (10th Cir.1994) (Table). None of the "additional" facts asserted by the debtors in their motion to reconsider strengthens their position or otherwise undermines the basic premise of the bankruptcy court's decision: The debtors did not demonstrate that direct payments were appropriate under the facts and circumstances of this case. In short, nothing argued by the debtors' demonstrates that the bankruptcy court abused its discretion in denying their motion to reconsider.

IT IS THEREFORE ORDERED that the decision of the bankruptcy court sustaining the trustee's objection to the debtors' proposed plan is AFFIRMED.