**In re Steven Dewayne and Kimberly BREEDING, Debtors.**

**No. 2:06–bk–14388M.**

United States Bankruptcy Court,
E.D. Arkansas,
Eastern Division.

May 14, 2007.

Kent Pray, Pray Law Firm, PA, N. Little Rock, AR, for Debtors.

**ORDER**

JAMES G. MIXON, Bankruptcy Judge.

The matter before the Court is the Chapter 13 Trustee's objection and amended objection to confirmation of the Chapter 13 plan proposed by Steven and Kimberly Breeding ("Debtors"). A hearing on the Trustee's objection was held in Helena–West Helena, Arkansas, on December 14, 2006, and the matter was taken under advisement.

The primary issue in this case is whether the proceeds from the redemption of two certificates of deposit that were owned pre-petition constitute disposable income. The parties have stipulated that if the proceeds are determined not to constitute disposable income, a second issue arises as to whether an obligation to Green Tree Servicing, the Debtors' mobile home creditor, may be paid outside the plan as the Debtors propose.

The proceeding before the Court is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L), and the Court has jurisdiction to enter a final judgment in this case.

FACTS

The facts are not disputed and were stipulated by the parties. On October 1, 2006, the Debtors filed a voluntary petition for relief under the provisions of Chapter 13 of the United States Bankruptcy Code and also filed their initial plan on that date. The Debtors' combined income reported on Form B22C reflects an annual gross income of $69,979.56, which is above the median income of $52,217.00 for a family of four in the State of Arkansas.[1] After all the Form B22C calculations were made, the results demonstrated that the Debtors had no monthly disposable income.[2]

---

1. See *www.usdoj.gov/ust* for a table listing the state median income for a family of four.

2. The Form shows monthly disposable income to be -$61.46.

Among the Debtors' scheduled assets were two certificates of deposit valued at $7000.00 and $3885.00. The certificates of deposit were pledged as collateral to secure an indebtedness to Bancorpsouth. The Debtors claimed the equity in the certificates as exempt in the amounts of $1749.44 and $1646.01 pursuant to 11 U.S.C. § 522(d)(5). No one objected to the claims of exemption.

With regard to Bancorpsouth's claim secured by the certificates, the Debtors' original plan proposed to continue making payments to the secured creditor. In their first amended plan on October 12, 2006, the Debtors proposed to redeem the certificates and treat any deficiency to Bancorpsouth as a general unsecured claim.

Pursuant to this proposed plan, the Debtors then redeemed the certificates.[3] After the secured claim of Bancorpsouth was satisfied, the equity remaining in the certificates in the sum of $3537.90 was disbursed by Bancorpsouth to the Trustee. Subsequently, the Debtors amended their plan a second time on November 3, 2006, to assert that since the equity in the certificates had been claimed as exempt, the funds held by the Trustee should be remitted to the Debtors. The Trustee objected to the plan on the basis that even though exempt, the sum at issue represents disposable income that must be committed to the plan pursuant to 11 U.S.C. § 1325(b).[4]

## DISCUSSION

The Bankruptcy Code requires that if the trustee or an unsecured creditor objects to confirmation of a proposed Chapter 13 plan, the plan may only be approved if it either proposes to pay the unsecured claims in full or "provides that all of the debtor's projected disposable income to be received in the applicable commitment period ... will be applied to make payments to unsecured creditors ..." 11 U.S.C. § 1325(b)(1)(B) (2006).

This Code provision directs that the Debtors, who do not propose to pay all unsecured creditors in full, are required to commit all projected disposable income to the plan for payments to unsecured creditors. At the commencement of the case, the Debtors' income was above the median in the State of Arkansas. Therefore, the Debtors were required to calculate the amount of disposable income available to pay unsecured creditors by using the means test set out in Section 707(b)(2)(A) & (B) of the Bankruptcy Code. 11 U.S.C. § 1325(b)(3) (2006).

This calculation begins with the Debtors' current monthly income, a new term created by the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA"). Current monthly income is now defined as the monthly average income the debtor or joint debtors received from all sources for the six-month period ending on the last day of the calendar month immediately preceding the filing of the case. 11 U.S.C. § 101(10A) (2006).

Income under this section includes "any amount ... paid by any entity other than the debtor ... on a regular basis for the household expenses of the debtor ..." but excludes benefits received under the Social Security Act and other types of income not relevant to this case. Id. As stated, the Debtors made all of the calculations required by the means test as implemented in Form B22C, including a computation of current monthly income, and the result

---

3. The record does not reflect whether this transaction was a premature withdrawal or a redemption at maturity.

4. The proposed plan under consideration, although amended twice, is still the initial plan and not a plan modified after confirmation as provided for by 11 U.S.C. § 1329.

was computed to be -$61.46 in monthly disposable income available to pay unsecured creditors.

■ The Trustee's argument with regard to the exempt certificates of deposits begins with an examination of the law prior to the implementation of BAPCPA, when a debtor's disposable income was determined by referring to the debtor's Schedules I and J. Subtracting the debtor's total expenses listed on Schedule J from the debtor's net income listed on Schedule I yielded an amount characterized as disposable income.

In addition to relying on Schedules I and J, the Trustee contends that pre-BAPCPA case law has determined that disposable income can come from other sources not listed on Schedule I. Although not itemized on Schedule I, this "additional income," such as a post-petition inheritance or recovery on a personal injury lawsuit, is nevertheless revenue that must be committed to a Chapter 13 plan to the extent it is not needed for support.

The Trustee further points out that precedent in the Eighth Circuit holds that this "additional income" must be committed to the plan even if claimed as exempt by the Chapter 13 debtor. *Stuart v. Koch (In re Koch)*, 109 F.3d 1285, 1289 (8th Cir.1997) (asserting that revenues received from exempt sources during the life of Chapter 13 plan are income, disposable portion of which must be paid to unsecured creditors).

The Trustee concedes that post-BAPCPA, above-median income debtors, such as the Debtors in the instant case, no longer refer to Schedules I and J to compute disposable income but instead apply the means test in Form B22C. As discussed above, the means test calculation begins with a current monthly income figure that, by statutory definition, does not include funds held in a certificate of deposit. The

Trustee argues that even though above-median income debtors now use a different method to calculate disposable income, BAPCPA did not alter the concept of "additional income" that must also be committed to the plan if it is disposable. Therefore, the Trustee concludes, the "additional income" resulting from the redemption of the certificates of deposit is disposable income that the Debtors must commit to their plan before the Court may confirm the plan.

The Court declines to decide the issue of whether the "additional income" concept has survived BAPCPA and is applicable to above-median income debtors because the Court concludes that the redemption of the certificates of deposit did not generate income of any kind. This conclusion is based on the principle that a Chapter 13 debtor retains his pre-petition assets and that those assets, such as the certificates of deposit at issue, are not included in the post-petition disposable income calculation. *McDonald v. Burgie (In re Burgie)*, 239 B.R. 406, 410 (9th Cir. BAP 1999) (citing *Hagel v. Drummond (In re Hagel)*, 184 B.R. 793, 796, 798 (9th Cir. BAP 1995); 1 Keith M. Lundin, Chapter 13 Bankruptcy §§ 1.7, 1.21, 1.44, 8.17 (2d ed.1997)). *See also In re Koch*, 109 F.3d at 1288 n. 3 (specifically recognizing that Chapter 13 debtors are given the chance to preserve pre-petition assets); *In re Moore*, 188 B.R. at 676 (stating a debtor whose plan meets all the requirements of sections 1325(a) and (b) may retain pre-petition assets in Chapter 13).

The Trustee cites the case of *In re Koch* as authority for the proposition that the proceeds from the surrender of the certificates are additional income that is disposable and, therefore, must be committed to the plan. In *Koch*, the Eighth Circuit Court of Appeals ruled that a Chapter 7

case should be dismissed for substantial abuse because the debtors had the ability to fund a Chapter 13 plan, albeit with workers' compensation payments that were claimed as exempt. The Eighth Circuit held that "revenues received from [pre-petition] exempt sources during the life of a Chapter 13 plan are 'income,' the disposable portion of which must be paid to unsecured creditors if the plan is to be confirmed ..." *In re Koch*, 109 F.3d at 1289.

█ In discussing whether exempt property must be included as disposable income in Chapter 13, the Court in *Koch* expressly focused on income or "revenues received from exempt sources" and not the sources themselves. Generally, income is "[T]he return in money from one's business, labor, or capital invested; gains, profits, salary, wages, etc." Black's Law Dictionary 763 (6th ed.1991). Under the analysis in *Koch*, the proceeds from the redemption of the certificates of deposit,[5] which were clearly pre-petition assets, cannot be properly described as income emanating from an asset. Rather, the proceeds are another form of that portion of the pre-petition assets that remained after the assets were redeemed and the secured claims were paid.

Converting the certificates of deposit to cash, check, or draft did not produce income for the estate because there was no resulting gain or increase. *In re Moore*, 188 B.R. 671, 676 (Bankr.D.Idaho 1995) ("the mere conversion of the debtors' pre-conversion assets from one form to another (even cash) does not produce income"). By way of comparison, it would be ludicrous to argue that the balance of a Chap-

ter 13 debtor's checking account would become disposable income if, between the bankruptcy filing and the confirmation hearing, the debtor withdrew all the funds and stuffed the cash under his mattress.

Further, the Trustee argues that "it is the nature of the Chapter 13 process—the determination of whether the funds are 'reasonably necessary for the support of the debtor, the debtor's dependents, or the debtor's business'—that renders the proceeds 'disposable income.' ... since the analysis is based upon the distinction and nature of Chapter 13, the form of the asset does not affect the trustee's rights ... in the proceeds." (Trustee's Reply Brief at 1–2.)

The Trustee seems to be arguing that if a Chapter 13 debtor liquidates a pre-petition, exempt asset belonging to a Chapter 13 debtor, the proceeds are subject to distribution to creditors if not reasonably necessary for the debtor's support. However, the cases he cites in support of that proposition are inapposite to the instant case in that each deals with post-petition income generated by a pre-petition exempt asset and not, as here, the post-petition conversion of a pre-petition asset from one form to another. *See In re Taylor*, 212 F.3d 395 (8th Cir.2000) (exempt pension generated post-petition payments that would be disposable income in a Chapter 13 case); *In re Koch*, 109 F.3d 1285 (8th Cir.1997)(exempt workers compensation claim resulted in post-petition payments that would be disposable income in a Chapter 13 case); In re *Pendleton*, 225 B.R. 425 (Bankr.E.D.Ark.1998)(post-petition settlement proceeds from an exempt,

---

**5.** Arkansas law defines a certificate of deposit as "an instrument containing an acknowledgment by a bank that a sum of money has been received by the bank and a promise by the bank to repay the sum of money. A certifi-

cate of deposit is a note of the bank." Ark. Code Ann. 4–3–104(j) (Michie 1987). Thus, a certificate of deposit, like currency, is a form of negotiable instrument.

pre-petition personal injury cause of action were disposable income).

■ The value of this asset is implicated, if at all, by the best interests of creditors test found in Section 1325(a)(4)[6] of the Bankruptcy Code. That section requires a Chapter 13 plan to propose payments to unsecured creditors in an amount that is not less than they would receive in a hypothetical Chapter 7 liquidation. Here, the equity in the certificates was claimed as exempt property while in the form of a certificate of deposit so their value would not have been available to creditors in a hypothetical Chapter 7 liquidation. And even if the certificates had not been claimed as exempt, the Debtor may keep the asset in a Chapter 13 case if the plan complies with 11 U.S.C. § 1325(a)(4).

Therefore, for these reasons the Trustee's objection as it pertains to the proceeds from the certificates of deposit is overruled.

■ The Trustee also objects to a provision in the initial plan that proposes to pay the secured claim and any arrearage owed to Green Tree outside the plan. The Debtors argue that if they are permitted to pay Green Tree directly, they will save approximately $1380.00 in Trustee's fees over the life of the sixty-month plan.[7]

The Bankruptcy Code provides in relevant part that a plan shall "(1) provide for the submission of all or such portion of future earnings or other future income of the debtor to the supervision and control of the trustee as is necessary for the execution of the plan...." 11 U.S.C.

§ 1322(a)(1) (2006). However, the Trustee concedes that there is no express statutory prohibition preventing direct payment to a creditor by a debtor, a practice described informally as "payment outside the plan" in contrast to payments made through the plan.

A trustee's interest in payments being made through the plan, at least as to secured creditors, is economic. The trustee charges a statutory commission or fee to administer the monies passing through his hands, and the percentage of the fee charged is a function of the operating expense of each trustee's office. 28 U.S.C. § 586(e)(2) (2006).

A number of cases have addressed the issue of whether a debtor may pay creditors outside the plan in the face of an objection by the trustee. Many courts have concluded that the bankruptcy court in the exercise of its discretion may determine that payments may be made inside or outside the plan. *Barber v. Griffin (In re Barber)*, 191 B.R. 879, 883 (D.Kan.1996) (citing *Foster v. Heitkamp (In re Foster)*, 670 F.2d 478, 486 (5th Cir.1982); *First Bank & Trust v. Gross (In re Reid)*, 179 B.R. 504, 506 (Bankr.E.D.Tex.1995); *In re Gregory*, 143 B.R. 424, 426 (Bankr. E.D.Tex.1992)).

In exercising its discretion, the court may examine relevant factors before deciding whether payment may be made outside the plan. Courts consider the following factors:

> whether the debt is modified by the plan, the sophistication of the creditor, the ability and incentive of the creditor

6. That Code section provides that the court shall confirm a chapter 13 plan if "(4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were

liquidated under chapter 7...." 11 U.S.C. § 1325(a)(4) (2006).

7. The Debtors argue in their brief that the fee in this case will equal 5% although there is no proof of this in the record.

to monitor payments, whether the debt is a commercial or consumer debt, the ability of the debtor to reorganize absent direct payment, whether the payment cannot be delayed, the number of payments proposed to satisfy a claim, whether a direct payment by a debtor under the plan would impair the trustee's ability to perform his/her standing trustee duties, and unique or special circumstances of a particular case. *In re Gregory,* 143 B.R. at 427. In the instant case, neither party introduced evidence concerning most of the factors cited.

By case law a presumption exists that favors distribution by the trustee. *In re Barber,* 191 B.R. at 885 (citing *In re Slaughter,* 188 B.R. 29, 31 (Bankr.D.N.D. 1995)). A trustee collects no commission on funds that the debtor distributes directly to a creditor, *In re Aberegg,* 961 F.2d 1307, 1309 (7th Cir.1992), and the Debtors in the instant case seek to avoid paying the Trustee's commission. Some courts have held that avoiding payment of the trustee's fee is an insufficient reason to permit the debtor to pay creditors outside the plan. *In re Genereux,* 137 B.R. 411, 413 (Bankr.W.D.Wash.1992)(citing *In re Harris,* 107 B.R. 204, 209 (Bankr.D.Neb.1989)).

Permitting debtors to pay creditors outside the plan over the objection of the trustee does potentially jeopardize the operation of the Office of the Chapter 13 Trustee as a self-funded program. After the advent of BAPCPA, the Court takes judicial notice that the rate of case filings has decreased dramatically, thereby reducing the amount of money passing through the office of the Chapter 13 Trustee by some amount not shown by the record. New provisions of BAPCPA contained in 11 U.S.C. § 1325(b) and 11 U.S.C. § 101(10A) could combine to produce more confirmable Chapter 13 plans that make no distribution to unsecured creditors, es-pecially for above-median income debtors. Additionally, requiring payment to be made to the Chapter 13 trustee by debtors produces an audit trail that minimizes debtor-creditor disputes over whether and when a payment has been made.

For these reasons, the objection to confirmation on the basis that the Debtors improperly propose to pay Green Tree outside the plan is sustained.

## CONCLUSION

The Trustee's objection to confirmation is overruled in part and sustained in part. The Debtors have twenty (20) days to file a modified plan consistent with this opinion or the case will be dismissed.

IT IS SO ORDERED.