**In re John FORD, Jr., Ernest Smith, Jr., Sandra Arnold, Debtors.**

**Bankruptcy Nos. 93–11316, 93–11314 and 94–10040.**

United States Bankruptcy Court, E.D. Texas, Beaumont Division.

April 5, 1995.

---

Bob Barron, Nederland, TX, for debtors.

Marc Henry, Lewis & Henry, Beaumont, TX, for First Bank & Trust.

Mike Gross, Chapter 13 Trustee, Tyler, TX.

## OPINION

Donald R. Sharp, Bankruptcy Judge.

Pursuant to regular setting, the hearing on confirmation of the Chapter 13 Plans in the above referenced cases came before the Court. These cases have been consolidated only for the purposes of this opinion because they present the same issue. This opinion constitutes findings of fact and conclusions of law to the extent required by Fed.R.Bankr.P. 7052 and disposes of all issues before the Court.

## FACTUAL AND PROCEDURAL BACKGROUND

### FORD

John Ford, Jr. ("Ford") filed a Chapter 13 bankruptcy proceeding in which First Bank & Trust ("FB & T") filed a secured claim in the amount of $13,405.59. The claim was for the balance due on a promissory note ("Note") executed on June 23, 1992, and secured by a 1992 Chevrolet Lumina. The Note provided for a principal amount of $16,588.35, an interest rate of 8.0%, and a term of 48 months extending from August 7, 1992, to July 7, 1996, resulting in a monthly payment of $406.23.

Prior to confirmation, Ford and FB & T entered into a refinancing agreement called a reaffirmation agreement by the parties. The agreement provides for a principal amount of $12,269.72, an interest rate of 7.0%, a term of 45 months extending from February 1, 1994, to October 1, 1997, resulting in a monthly payment of $310.81.

### SMITH

Ernest Smith, Jr. ("Smith") filed a Chapter 13 bankruptcy proceeding in which FB & T filed a secured claim in the amount of $13,596.51. The claim was for the balance due on a promissory note ("Note") executed on June 7, 1993, and secured by a 1993 Ford Ranger. The Note provided for a principal amount of $12,580.49, an interest rate of 8.9%, and a term of 60 months extending from July 17, 1993, to June 17, 1998, resulting in a monthly payment of $261.18.

Prior to confirmation, Smith and FB & T entered into a refinancing agreement called a reaffirmation agreement by the parties. The agreement provides for a principal amount of $10,815.00, an interest rate of 7.0%, a term of 51 months extending from February 1, 1994, to April 1, 1998, resulting in a monthly payment of $245.78.

### ARNOLD

Sandra Arnold ("Arnold") filed a Chapter 13 bankruptcy proceeding in which FB & T filed a proof of claim in the amount of $8,839.62, which was secured in the amount of $7,675.00 and unsecured in the amount of $1,164.62. The claim was for the balance due on a promissory note ("Note") executed on July 7, 1993, and was secured by a 1992 Nissan Sentra. The Note provided for a principal amount of $8,963.77, an interest rate of 10.0%, and a term of 54 months extending from August 21, 1993, to January 21, 1998, resulting in a monthly payment of $207.60.

Prior to confirmation, Arnold and FB & T entered into a refinancing agreement, called a reaffirmation agreement by the parties. The agreement provides for a principal amount of $7,675.00, an interest rate of 7.0%, a term of 42 months extending from March 15, 1994, to August 15, 1997, resulting in a monthly payment of $206.57.

In each case, the Chapter 13 Plan ("Plan"), currently before the Court for confirmation, proposes to pay FB & T direct monthly payments outside the supervision and control of the Chapter 13 Trustee. The Trustee objects to confirmation on the grounds that a debtor cannot modify a secured claim in a Chapter 13 proceeding and then pay the

creditor directly while paying his other claims to the Trustee for distribution to the other creditors. The Debtors and the creditor refer to this treatment as paying the claim "outside the plan". The phrase "outside the plan" is not a term of art and apparently means different things to different people and is used freely in bankruptcy court to mean different things at different times. In this case, it simply means that the claim is not being paid to the Trustee for distribution to the creditor but is being paid directly to the creditor by the Debtors. Therefore in this opinion the term outside the plan is not intended to be an all encompassing term of art but is simply a shorthand method of referring to the proposed treatment in these particular cases.

### DISCUSSION

The dispute in this case between the Debtors and creditor on one hand and the Trustee on the other centers around the interpretation of 11 U.S.C. § 1322. The Debtors argue that § 1322(b)(2) provide that the Chapter 13 Plan may modify the rights of holders of secured claims. They argue that the permissive may in the statute means that the modification may occur in the Chapter 13 Plan or outside the plan. The Trustee argues that the permissive may means that the secured claims are subject to modification but that if they are modified then they must be paid by remitting the payments to the Trustee for distribution to the creditor.

The Court believes that on an interpretation of the statutory language alone it must come down on the side of the Trustee. It is clear that the structure of 11 U.S.C. § 1322 dealing with the contents of the Plan provide in sub-section (a) certain mandatory requirements by prefacing that section with the language "the plan shall ..." and that section (b) contains a group of provisions that are permissive by prefacing that section with the permissive word "may".

The Court also rejects the Debtors argument that it may pay this modified claim outside the Plan by considering the entire structure and statutory scheme of the Bankruptcy Code, particularly the Chapter 13 provisions.

Congress has carefully established a system of supervision for Chapter 13 cases. The U.S. Trustee appoints a Chapter 13 Trustee to supervise the administration of each individual case. The Trustee system was established by Congress to insure efficient administration of Chapter 13 cases. The Trustee acts as an advocate to insure that contributions are regularly made to the plan, to insure that payments are properly made to creditors, and to insure compliance with the provisions of the Code.

To allow debtors and creditors to pick and choose those claims they will submit to the supervision of the Trustee undermines the integrity of the entire trustee system. Rather than a coherent system in which Debtors' financial affairs are completely restructured under the supervision of a trustee, the Debtor is dealing with each creditor on an individual basis and the competing claims of the creditors could shortly create chaos in the Debtor's life. This is exactly the type of situation that the Chapter 13 provisions of the Bankruptcy Code are designed to deal with. However, the only effective way that this situation can be dealt with is to maintain the comprehensive reorganizational nature of a Chapter 13 proceeding. This requires that the Trustee remain a buffer between the debtor and his creditors and that the trustee system be allowed to function as Congress intended.

It is clear to this Court that Congress tied the payment of modified claims to the Chapter 13 Plan.

Specifically, 11 U.S.C. § 1325(a)(5) requires that the debtor pay the present value of the allowed secured claim in full during the life of the plan. 11 U.S.C. § 1322(c) further prevents the extension of all payments beyond the life of the plan. Several courts have found that § 1322(c) poses a clear term limitation on the debtor's ability to modify a secured claim under § 1322(b)(2). *In re Legowski,* 167 B.R. 711, 716 (Bkrtcy. E.D.Tex.1994); *In re Session,* 128 B.R. 147, 151 (Bkrtcy.E.D.Tex.1991); *In re Scott,* 121 B.R. 605, 608 (Bkrtcy.E.D.Okl.1990).

Debtor would assert that these limitations only apply to modifications included in the

plan; secured claims modified outside the plan would not be subject to such modifications.

This clearly was not the intent of Congress. § 1325(a)(5) and § 1322(c) indicate that Congress intended to limit debtors ability to modify secured claims. By allowing debtors to modify claims outside the plan, the Court would be allowing debtors to avoid the limitations imposed by Congress. Therefore, this Court believes all claim modifications must be made through the plan subject to the limitations of the Code.

This Court, therefore, holds that § 1322(b)(2), read in conjunction with other Code provisions, requires all claims modifications to be made through the Chapter 13 plan subject to the limitations imposed upon such plan by applicable Code provisions.

In the present cases, Debtors modified secured claims outside the terms of their Chapter 13 plans, thus violating the requirements of § 1322(b)(2). It is therefore clear that Confirmation must be DENIED.