**In re Charles F. HARRIS, Debtor.**

**Bankruptcy No. 95–13587–CJK.**

United States Bankruptcy Court,
D. Massachusetts.

Sept. 30, 1996.

Nina Parker, Boston, MA, for Debtor.

Richard Askenase, Chapter 13 Trustee.

Joseph Gordon, Boston, MA, for Boston Bank of Commerce.

Gary Donahue, Boston, MA, for United States Trustee.

## MEMORANDUM OF DECISION ON TRUSTEE'S OBJECTION TO CONFIRMATION OF CHAPTER 13 PLAN

CAROL J. KENNER, Chief Judge.

This case is before the Court on the Chapter 13 Trustee's objection to confirmation of the Debtor's Second Amended Chapter 13 Plan. The Trustee objects only to the provision in the plan that authorizes the Debtor to

make his payments on the modified secured claim of the Boston Bank of Commerce directly to the Bank, instead of through the office of the Chapter 13 Trustee. Section 1326(b)(2) of the Bankruptcy Code, in combination with 28 U.S.C. § 586(e)(1)(B), requires the Debtor to pay the Trustee a percentage fee on all plan payments made through the Trustee's office, but not on plan payments made directly to creditors. The Trustee argues that the Code requires the Debtor to make payments on modified claims through the Chapter 13 Trustee and, accordingly, to pay the fee on such payments. For the reasons set forth below, the Court holds that, to the extent such payments are to be made out of future income, the Debtor must make the payments through the Chapter 13 Trustee.

### FACTS AND PROCEDURAL HISTORY

On May 24, 1995, the Debtor, Charles F. Harris, filed a petition under Chapter 13 of the Bankruptcy Code. At the time of the filing, he was obligated to Boston Bank of Commerce in the amount of $107,571.00. This debt is secured by a first-position mortgage on real property owned by the Debtor and located at 96 Marcella Street in Boston. The property, which is not the Debtor's residence, has a value of only $80,000.00.

In his Second Amended Chapter 13 Plan, the Debtor proposes to bifurcate the Bank's claim into an $80,000 secured claim and a $27,571 unsecured claim. The Debtor would satisfy the secured claim by making 60 monthly payments in the amount of $1,699.76, an amount calculated to pay the claim in full over the five-year life of the plan with interest at the annual rate of ten percent. The unsecured balance of the claim would be added to the class of unsecured creditors. This class includes claims totalling $115,595.00, on which the Debtor would pay a total dividend of ten percent over the life of the plan. The plan also proposes payments to priority creditors in the approximate amount of $8,559.70. The Debtor would make his payments on the unsecured and priority claims through the Trustee, subject to the appropriate fee, but would make payments on the secured claim directly to the Bank, thereby avoiding any fee on those payments.

The Chapter 13 Trustee objected to confirmation of the plan, arguing that payments on the modified secured claim must be made through the Chapter 13 Trustee and subject to his fee. Pursuant to 28 U.S.C. § 586(a)(3)(C), the United States Trustee has submitted comments in support of the objection. The Debtor and the Bank have filed memoranda defending the provision for direct payment.

### ARGUMENTS

The Chapter 13 Trustee and the United States Trustee make lengthy arguments in opposition to direct payment to a creditor on a modified claim. In short, they argue that the Bankruptcy Code mandates that all payments be made through the Chapter 13 Trustee on all claims whose treatment is modified under the plan; that direct payment would impair the Trustee's ability to monitor the Debtor's payments and compliance with the plan; that it would also undercut the financial stability of the office of the standing Chapter 13 Trustee, which, by legislative design, is funded entirely from fees collected on payments made through that office; that the Debtor can afford to pay the fees without affecting the feasibility of the plan; and, in any case, that the Debtor's sole purpose for proposing direct payment is to avoid the Trustee's fee, which is not sufficient cause for authorizing direct payment and is evidence that the plan is not proposed in good faith.

The Debtor responds that, although the Code generally requires that Chapter 13 plan payments be made through the Trustee, the Code also authorizes the Court to permit direct payment in appropriate circumstances. He states that this case presents appropriate circumstances for direct payment in that (1) the Trustee's ten percent fee would severely jeopardize the feasibility of the plan; (2) the Bank has the sophistication to competently monitor the Debtor's payments on its secured claim; (3) payment through the Trustee would significantly delay the Bank's receipt of each disbursement, resulting in confusion, improper accounting, and consequent administrative and legal costs; (4) the plan provides for

payments on unsecured claims to be made through the Trustee's office, thus assuring the Trustee of adequate compensation for administration of this case; and (5) direct payment would not impair the Trustee's ability to perform his duties in this case and would not prejudice other creditors. To this, the Bank adds that payment through the Chapter 13 Trustee would delay by at least 45 days the Bank's receipt of each payment from the Debtor, which would deprive the Bank of interest to which it is entitled; moreover, late payment would place the loan in default status, thereby subjecting the loan to problems with bank regulators.

## DISCUSSION

### a. *Direct Payment of Modified Secured Claims*

■ The first issue presented is whether the Bankruptcy Code requires that all payments on modified secured claims be made through the Chapter 13 Trustee's office, as the United States Trustee argues, or whether the Code permits direct payment in appropriate circumstances, as the Debtor argues. Many courts have addressed this issue, and they are not in agreement on it. Some interpret the relevant provisions as affording courts the discretion to permit direct payment.[1] Others interpret the same provisions as requiring without exception that payments be made through the trustee.[2] However, the rationales for these positions vary considerably, even among those who reach the same conclusion, and the confusion is multiplied when one looks more broadly at how courts have addressed the tangle of other issues surrounding "direct payment." Given this state of the law, and having no binding precedent on the issue in this circuit, the Court will begin with the language of the relevant statutes.

Three provisions require consideration. The first is 28 U.S.C. § 586, the statute by which Congress provided for the selection of the standing Chapter 13 trustee and the funding of the trustee's program. In relevant part, § 586 provides that the standing Chapter 13 trustee shall collect a percentage fee "from all payments received by such individual [the standing trustee] under plans in the cases under chapter 12 or 13 of title 11 for which such individual serves as standing trustee." 28 U.S.C. § 586(e)(2). The second provision is § 1322(a)(1) of the Bankruptcy Code. It states that the Chapter 13 plan "shall provide for the submission of all or such portion of future earnings or other future income of the debtor to the supervision and control of the trustee as is necessary for the execution of the plan." 11 U.S.C. § 1322(a)(1). And the third is § 1326(c) of the Code, which states that "except as otherwise provided in the plan or in the order confirming the plan, the trustee shall make payments to creditors under the plan." 11 U.S.C. § 1326(c).

■ By these provisions, Congress enacted a scheme and mechanisms for the self-funding of the Chapter 13 standing trusteeship. Congress intended that the compensation and expenses of each standing Chapter 13 trustee would be funded entirely from fees on payments made through the trustee's office. The fee—as a percentage of payments the trustee receives under Chapter 13 plans—is set by the Attorney General, after consultation with the United States trustee who appointed the standing trustee. 28 U.S.C. § 586(e)(1)(B). Section 586(e)(2) requires that the fee be assessed and collected on all payments that the standing trustee receives under Chapter 13 plans. 28 U.S.C. § 586(e)(2). And the Bankruptcy Code requires the debtor to submit "all or such

---

1. See *Matter of Aberegg,* 961 F.2d 1307 (7th Cir. 1992) (bankruptcy courts have discretion to permit debtors to make payment directly to some secured creditors); *Matter of Foster,* 670 F.2d 478, 486 (5th Cir.1982) (same); and *In re Gregory,* 143 B.R. 424 (Bankr.E.D.Tex.1992) (courts may permit direct payment where the debtor demonstrates a significant reason for departing from the norm).

2. See *In re Fulkrod,* 973 F.2d 801 (9th Cir.1992) (Chapter 12 of the Bankruptcy Code [whose relevant provisions are identical to those in Chapter 13] does not authorize a debtor to make payments directly to creditors with modified claims to avoid paying the standing trustee's statutory fee); and *In re Ford,* 179 B.R. 821 (Bankr. E.D.Tex.1995) (payments on modified secured plans must be made through the Chapter 13 Trustee).

portion of future earnings or other future income of the debtor to the supervision and control of the trustee as is necessary for the execution of the plan." 11 U.S.C. § 1322(a)(1).

■ Thus the fee is assessed by something of a crude mechanism. Plan payments derived from future earnings or other future income must be made through the trustee. 11 U.S.C. § 1322(a)(1). And all such payments—and any others that happen to be made through the trustee—are subject to the fee, which is applied in all cases according to a uniform rate schedule. 28 U.S.C. § 586(e)(1)(B) and (e)(2). Chapter 13 plans are funded in large part with debtors' future earnings and other future income. Section 1322(a)(1) helps ensure that the cases administered by the trustee will, on the whole, generate sufficient payments to fund the trustee's program; and the uniform application of the fee to these payments relieves the trustee from having to apply for a fee in each case and to allocate his or her time and expenses on a case-by-case basis. Under such a mechanism, some debtors, inevitably, will pay more—perhaps much more—than their share of the cost of the trustee's program; but this is necessary because others will pay less than their share or nothing at all. *In re Savage*, 67 B.R. 700, 706–708 (D.R.I.1986) ("The 'no asset' or 'meager asset' cases can be handled professionally, because the system is not dependent on each individual matter to generate its own fees."). Thus the system, though somewhat crude and inequitable, serves a purpose, further evidenced by the fact that the Bankruptcy Code makes no provision for adjustment of the standing trustee's fee in individual cases, on a case-by-case basis. In fact, the bankruptcy court lacks authority in Chapter 13 cases to set, review, or otherwise adjudicate the amount of the fee. *Id.* at 704–708.

■ Citing § 1326(c) of the Bankruptcy Code, the Debtor argues that not all plan payments need be made through the Trustee, such that § 1322(a)(1) is subject to exceptions. Section 1326(c) states that "except as otherwise provided in the plan or in the

order confirming the plan, the trustee shall make payments to creditors under the plan." 11 U.S.C. § 1326(c). The Court agrees that, by virtue of this language, the Code clearly contemplates that, in some circumstances, the debtor may make his or her plan payments directly to creditors.

■ However, it does not necessarily follow that § 1322(a)(1) is subject to exception. The future income (including future earnings) that, under § 1322(a)(1), a debtor is obligated to submit to the trustee is only one of the sources from which a debtor might conceivably fund plan payments. Payments might also be funded, at least in part, with prepetition cash, with proceeds from the sale of prepetition assets, with proceeds of postpetition loans, and with monies received as gifts from third parties. Plan payments from these sources would not be subject to § 1322(a)(1), under which the debtor must submit to the trustee only such "future earnings or other future income" as are necessary to fund the plan. 11 U.S.C. § 1322(a)(1). To the extent that the plan is dependent on funding from other sources, § 1322(a)(1) does not obligate the debtor to submit such funding to the trustee.[3]

■ Therefore, the Court need not read unstated exceptions into § 1322(a)(1) in order to supply the circumstances in which, as § 1326(c) recognizes, a debtor might legitimately make payments directly. Section 1322(a)(1) is mandatory ("The plan *shall* provide for the submission ..."), contains no express exception, and need not be read as subject to implicit exception. Especially where the trustee's program is funded from fees on payments he or she receives, and § 1322(a)(1) is the only provision in Chapter 13 that requires submission of funds to the trustee, the Court should not read exceptions into it unnecessarily. Accordingly, the Court holds that, to the extent that plan payments on modified secured claims are funded with future earnings or other future income, such funding must be submitted to the trustee, and the Court may not permit direct payment, regardless of the circumstances of indi-

---

3. It may nonetheless be appropriate or necessary in some circumstances to submit even that funding to the trustee, but not on account of § 1322(a)(1).

vidual cases.[4] *Accord In re Fulkrod,* 973 F.2d 801 (9th Cir.1992) (Chapter 12 of the Bankruptcy Code [whose relevant provisions are identical to those in Chapter 13] does not authorize a debtor to make payments directly to creditors with modified claims to avoid paying the standing trustee's statutory fee); *In re Ford,* 179 B.R. 821 (Bankr.E.D.Tex. 1995) (payments on modified secured plans must be made through the Chapter 13 Trustee).

### b. *Effect on Treatment of Bank's Claim*

In reaching this conclusion, the Court rejects the Bank's argument against payment through the Trustee. The Bank complains that when a payment is channelled through the Chapter 13 Trustee, the Bank does not receive the payments until at least 45 days after it is due and paid to the Trustee. This deprives the Bank of interest on its claim and may also subject the loan to increased attention from banking regulators.

At least in principle, the Bank has articulated a legitimate grievance. Under the Bankruptcy Code, a secured creditor like the Bank is entitled to value, as of the effective date of the plan, of not less than the allowed amount of its claim. 11 U.S.C. § 1325(a)(5)(B)(ii). The amount and timing of the payments prescribed in the plan are

designed to give the Bank this value. As the Bank contends, payment through the Trustee typically postpones the Bank's receipt of each payment until a date significantly later than the Debtor is obligated to make it.[5] In effect, the delay diminishes the value of each payment to the Bank, such that the value of the stream of payments on the Bank's claim may drop below that to which the Bank is entitled under § 1325(a)(5)(B)(ii).

Despite this legitimate concern, the Court holds that the Bank has no right to direct payment. Section 1322(a)(1) is categorical. Moreover, when Congress enacted that subsection, it must have understood that payment through the Trustee would to some extent delay creditors' receipt of payment. And it must also have understood that this delay would affect even those whose payment rights under the plan are, by design, time-sensitive. 11 U.S.C. § 1325(a)(5)(B)(ii). Therefore, the Court will not recognize an exception to § 1322(a)(1) to avoid this delay.[6]

### CONCLUSION

The Debtor having offered no evidence that he would fund the plan from any source other than future income, the principal source of funding in Chapter 13, the Court finds that the plan will be funded from future income. As the Chapter 13 plan fails to provide for submission of such funding to the

---

**4.** This holding is limited in two respects. First, it applies only to payments made from future income; § 1322(a)(1) would not apply to payments made from other sources. Second, the holding is limited to modified secured claims. The Court expresses no opinion as to direct payment of claims secured only by a security interest in real property that is the debtor's principal residence. The special protection afforded the holders of such claims would bear upon the issue. See 11 U.S.C. § 1322(b)(2); *Nobelman v. American Savings Bank,* 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993); and 1 Keith M. Lundin, *Chapter 13 Bankruptcy,* § 4.22 (2d ed. 1994).

**5.** The Court has received no evidence as to the length of the delay, but the Chapter 13 Trustee does not deny that there is some delay. He explains that when he receives a full plan payment from the debtor, his office normally disburses those funds to creditors by the fifteenth day of the month following receipt of payment, which would permit delays of up to forty-five days plus mailing time.

**6.** This is not to say that the Bank and other holders of modified secured claims have no remedy. Two come to mind. First, if the Trustee's procedures are unduly inefficient, holders of modified secured claims may petition for more expeditious payment from the Trustee. Second, if the Trustee's delay cannot reasonably be shortened to within acceptable limits, the creditor may, in negotiations with the debtor or in objections to confirmation, seek compensation for the delay in the form of higher interest on the claim. (The Court cannot at this time adjudicate whether a debtor may be so compelled to pay the cost of this delay, but this is an avenue that creditors can pursue.)

Also, in many cases, the harm from the delay may not warrant a remedy, either because the delay is not much longer than the creditor itself and other similar creditors would afford debtors as a grace period, or because the proposed interest rate already contain sufficient compensation even for the delay.

Trustee, the Court must deny confirmation. A separate order will enter accordingly.