**Mario and Maria PEREZ, Appellants,**

v.

**David G. PEAKE, Trustee, and Federal Home Loan Mortgage Corporation, Appellees.**

**Civil Action No. H–06–1140.**

United States District Court, S.D. Texas, Houston Division.

July 19, 2007.

Reese W. Baker, Baker Associates, Richard W. Aurich, Jr., Houston, TX, for Appellants.

Kenneth Paul Thomas, Houston, TX, for Appellees.

## MEMORANDUM AND OPINION

ROSENTHAL, District Judge.

In October 2005, the Southern District of Texas bankruptcy judges implemented a new local rule providing that home mortgage payments would be made through the Chapter 13 trustee, rather than directly by the debtor. The bankruptcy judges also approved Home Mortgage Payment Procedures adopted by the trustees and a revised form for Chapter 13 plans, the Uniform Plan. Local Rule 3015(b), (the "Local Rule"), the Home Mortgage Payment Procedures, (the "Procedures"), and the Uniform Plan apply to a home mortgage for the debtor's principal residence when there is a default and the plan deals with an arrearage. Under the Procedures, the

trustee will make the payments "as soon as practicable," including, if the trustee has available funds, before the hearing on plan confirmation. The Local Rule and the Procedures state that the bankruptcy court may vary the requirements by order in a particular case. This appeal challenges the existence and application of the Local Rule, the Procedures, and the Uniform Plan provisions on the disbursement of home mortgage payments by Chapter 13 trustees as opposed to the debtors themselves.

The debtors, Mario and Maria Perez, moved in the bankruptcy court for leave to disburse their mortgage payments directly to the mortgage lender rather than through the trustee. The bankruptcy court held a hearing on their motion, heard testimony, and wrote a lengthy and thoughtful opinion analyzing the debtors' challenges to Local Rule 3015(b) and the related Procedures and Uniform Plan. The bankruptcy court entered findings of fact and conclusions of law upholding the Local Rule, Procedures, and Uniform Plan against the legal challenges raised by the debtors. The court declined to exercise its discretion to waive conduit payment based on the evidence the debtors presented. *In re Perez*, 339 B.R. 385 (Bankr.S.D.Tex. 2006). This appeal followed.

Based on a careful review of the record, the parties' submissions, and the applicable law, this court affirms the decision of the bankruptcy court.[1] As analyzed below, the provisions in the Local Rule and Procedures that debtors must make their mortgage payments through the trustee unless the bankruptcy court exercises its

discretion to order otherwise do not violate the Bankruptcy Code. The Local Rule and the Procedures are consistent with the long-standing general presumption that a debtor makes monthly payments to the Chapter 13 trustee for distribution, subject to the bankruptcy court's discretion to allow the debtor to pay creditors directly rather than through the trustee based on the facts of a specific case. *See* 11 U.S.C. § 1326(b) (2005); *In re Foster*, 670 F.2d 478, 486 (5th Cir.1982) ("[T]he Chapter 13 trustee is normally to make distributions to creditors of the payments made under the plan by the 'debtor.' "). Based on the record evidence, the bankruptcy judge's decision not to allow these debtors to pay their mortgage lender directly was not an abuse of the discretion provided under the Code, the case law, or the Local Rule and Procedures. The reasons for these rulings are set out in detail below.

## I. Background

Section 1326(c) of the Bankruptcy Code states: "Except as otherwise provided in the plan or in the order confirming the plan, the trustee shall make payments to creditors under the plan." 11 U.S.C. § 1326(c). Section 1322(a)(1) provides that the plan will "provide for the submission of all or such portion of future income of the debtor to the supervision and control of the trustee as is necessary for the execution of the plan." 11 U.S.C. § 1322(a)(1). Section 1325(a)(1) states that a court "shall" confirm a plan if a list of confirmation tests is met, including that the plan "complies with the provisions of this chap-

1. The debtors have submitted a brief, (Docket Entry No. 21), and the trustee, David Peake, has submitted a reply brief, (Docket Entry No. 26). Two mortgage companies, Bank of America Home Loan Services and Wells Fargo Home Mortgage, and the Federal Home Loan Mortgage Corporation have filed an amicus brief. (Docket Entry No. 27). The amici were not involved in the debtors' loan. The amici state that the debtors' mortgage company, ABN AMRO Mortgage Group, is in accord with the amicus brief. (*Id.* at ii, n. 1).

ter."[2] The Fifth Circuit has read these provisions as creating a presumption in favor of payments through the trustee, while recognizing that the bankruptcy court has discretion to permit or deny debtors to make direct payments to their creditors, including home mortgage lenders, rather than require conduit payments through the Chapter 13 trustees. *In re Foster*, 670 F.2d at 486 ("[The Code] makes it clear that the Chapter 13 trustee is normally to make distributions to creditors of the payments made under the plan by the debtor"); *Mendoza v. Temple–Inland Mortgage Corp. (In re Mendoza)*, 111 F.3d 1264, 1269 (5th Cir.1997) ("[W]e believe that the bankruptcy court is in the better position to ascertain whether or not the debtor is capable of acting as a disbursing agent and make direct payments of either current mortgage payments or arrearage payments. The only limitation is that the bankruptcy court in making this determination 'must determine whether the debtor will be able to make those payments and ... comply with the plan.'"); *In re Gregory*, 143 B.R. 424, 427 (Bankr.E.D.Tex.1992) ("Clearly, a court must balance numerous considerations before permitting a debtor to act as a disbursing agent."); *In re Reid*, 179 B.R. 504, 507 (E.D.Tex.1995) ("[T]he general rule requires that debts provided for in a Chapter 13 plan be paid through the Chapter 13 Trustee.").[3]

In *Perez*, the court analyzed statutory challenges to the Local Rule and Procedures codifying the presumption in favor of conduit mortgage payments. *Perez* recognized that under the Local Rule and Procedures, the bankruptcy courts have discretion to allow particular debtors to make their mortgage payments directly rather than through the trustee. The *Perez* court drew on a number of factors identified in the case law to guide its decision as to whether the particular debtors should be allowed to make the payments

---

2. Sections 1322 and 1326 of the Bankruptcy Code, 11 U.S.C. §§ 1322, 1326, were not changed by the 2005 Bankruptcy Abuse Prevention and Consumer Protection Act, ("BAPCPA").

3. Other courts have reached similar results, holding that the feasibility test in section 1325(a)(6) limits the extent to which a Chapter 13 debtor can make payments directly to creditors. *See, e.g., In re Aberegg*, 961 F.2d 1307, 1309 (7th Cir.1992) (discussing § 1326(c) and § 1322(a)(1) and finding that the language in § 1322(a)(1) has "been uniformly interpreted as giving bankruptcy courts the discretion to permit debtors to make payment directly to some secured creditors, provided that the plan meets all the confirmability requirements set forth in § 1325(a)."); *In re Slaughter*, 188 B.R. 29, 31 (Bankr.D.N.D.1995) (considering "(1) whether the creditor receiving direct payments has the economic incentive and ability to monitor future direct payments; (2) whether the creditor receiving direct payments is capable of taking the requisite action of protecting its interests in the event of a default; (3)[and] the impact of direct payments on plan feasibility and whether, in the case of a Chapter 13 debtor engaged in business, meaningful reorganization is dependent upon direct payment"). The courts have disagreed as to the showing necessary to justify a deviation from the presumption in favor of conduit rather than direct payments. *Compare In re Barber*, 191 B.R. 879, 885–886 (D.Kan.1996) (concluding that "deviation from the normal periodic payments to the trustee should only be departed from when the debtor can demonstrate a significant reason for doing so") *with In re Vigil*, 344 B.R. 624, 630 (Bankr.D.N.M. 2006) (stating that while the Code creates a presumption in favor of payments by the trustee, the debtors "need not demonstrate *compelling* circumstances in order to justify confirmation of a plan that provides for direct payment according to the contract terms to a creditor · that is fully secured by personal property, provided the Debtors do not otherwise seek to modify the creditor's claim and provided that the plan otherwise meets all requirements for confirmation") (emphasis added).

directly. The court emphasized whether the debtors had been responsible in past dealings with creditors and the trustee. *Perez*, 339 B.R. at 409. The appellants challenge both the *Perez* court's conclusion that the Local Rule and Procedures are consistent with the Bankruptcy Code, and the conclusion that the debtors did not make the showing necessary to be allowed to pay their mortgage lender directly.

## A. Local Rule 3015(b) and the Home Mortgage Payment Procedures

Local Rule 3015(b) and the Procedures were approved in 2005 to change the practice that had existed in the Southern District of Texas. Before 2003, Chapter 13 debtors were routinely allowed to make monthly mortgage payments directly to home lenders. As described in detail in *Perez*, this practice had resulted in a large number of motions to lift stay filed by mortgage companies. Such motions were costly and burdensome for debtors to litigate. In 2003, three of the district's seven divisions changed to the practice that mortgage payments would be presumptively paid through the Chapter 13 trustee. In those three divisions, the number of motions significantly declined, which in turn "materially reduced costs for the debtors ... and improved the prospect for successful completion of Chapter 13 cases." *Perez*, 339 B.R. at 391. Based on the benefits realized in the two years of experience under the presumption in favor of conduit payments, the bankruptcy judges approved the district-wide adoption of this practice in 2005.

Local Rule 3015(b), effective October 17, 2005, states:

Mortgage Payments Through the Chapter 13 Trustee. Home mortgage payments will be made through the chapter 13 trustee, in accordance with Home Mortgage Payment Procedures. Home Mortgage Payment Procedures shall be procedures adopted by the chapter 13 trustees and approved by the court.

The Chapter 13 trustees promulgated and the bankruptcy court adopted the Home Mortgage Payment Procedures on September 29, 2005. Under Local Rule 3015(b) and the Procedures, a debtor may seek relief from the general rule requiring disbursements to the mortgage lender through the trustee. Local Rule 1001(d) states: "A judge may modify the application of the rules in any case." Paragraph 12 of the Procedures states that "[t]hese procedures may be varied in a particular case only by order of the Court."

As noted, the change from routinely allowing debtors to use direct payment for home mortgages to a rule presuming that the trustees will make mortgage payments addressed increased litigation over the status of the payments in Chapter 13 cases. The *Perez* opinion explained the reasons such disputes had increased: "As mortgages are packaged and sold in greater numbers, the record-keeping of the note holders, and their servicing agents, has deteriorated. The absence of accurate records of payment receipts, combined with the endemic failure of consumer debtors to maintain accurate records of their payments, has caused confusion and delay in the prosecution and resolution of motions to lift stay and, in some cases, has resulted in debtors losing their homes because they could not prove that payments had been made." 339 B.R. at 391. At the end of the case, the mortgage lender frequently claimed that the debtor was in default, while the debtor claimed that all payments had been made. *Id.* at 413. Both debtors and mortgage lenders had difficulty in presenting information as to what payments were made to the mortgage company and when they were received. *Id.* at 415. Presumptively requiring debtors to use

the "trustee as the disbursing agent" minimized such problems, "as trustees typically keep impeccable records," in contrast to both debtors and mortgage lenders. *Id.*

In *Perez*, the judge summarized the reasons for the adoption of the Local Rule and Procedures, as follows:

The implementation of Local Rule 3015(b) and the Home Mortgage Payment Procedures in the Southern District of Texas is an attempt to repair the damage that has been done to the system. By requiring debtors to make all of their payments through the trustee, debtors will no longer be able to play the shell game. Either the debtor will have sufficient funds to pay the trustee, or he will not have sufficient funds; and if he does not, he will not be allowed to prolong his Chapter 13 case. The trustee will be able to know immediately whether the existing plan is feasible— and this is exactly where the focus should be.

This approach will not only serve to more effectively monitor debtors; it will also serve to more effectively police home lenders. In recent years, mortgages have increasingly been packaged and sold, and then resold, and then resold again. One detrimental consequence of this trend has been loss of payment records by mortgagees and servicing agents. And, a detrimental consequence of this poor record keeping has been an increasing number of motions to lift stay that contain incorrect allegations about whether the debtor is in default and, if so, by how many payments. Because many debtors themselves fail to keep accurate records of when and how much they have paid their home lenders, this Court has found itself increasingly dealing with movants and respondents who cannot prove, with any degree of accuracy, how many pay-

ments the debtor has made and when the mortgage company has received the payments. Chapter 13 trustees keep excellent records. By requiring debtors to make their mortgage payments to these trustees, and by having the trustees remit these payments to the mortgagees, there will be much fewer questions, and much greater accuracy, about how much was paid to the home lender and when payment was remitted.

This clear evidence of payments also substantially benefits debtors upon completion of their cases. The procedures unanimously adopted by the bankruptcy judges of the Southern District of Texas achieve certainty, at the end of the case, that the mortgage is current because there is a record that all payments have been made during the case. Without such a record, it is quite common for the mortgage lender to assert that the mortgage is not current because of various allegedly missed payments during the case—shortages for tax and insurance escrows; late payments, penalties, and fees. Normally, the debtor cannot prove that the payments have been made because the debtor has no records. The usual result is that the debtor either loses the homestead or else the debtor is forced to file another bankruptcy case.

*Id.* at 415.

The bankruptcy court's analysis of the need for and benefits of a presumption in favor of conduit payments to mortgage lenders in Chapter 13 cases is supported by the existence of similar local rules in other districts, empirical data, and legal research and analysis by bankruptcy law experts. Similar local rules have been adopted by other districts. *See, e.g.,* BANKR.E.D. MICH. R. 3070–1 (2005); BANKR.D. KAN. R. 3015(b).1(3) (2000); BANKR.S.D. OHIO R. C–3.18.17 (1989). Opinions issued by bankruptcy judges in

these and other districts recognize the advantages of conduit payments of home mortgage loans. *See, e.g., In re Teagardner*, 98 B.R. 318, 321 (Bankr.S.D.Ohio 1989) (local rule requiring conduit mortgage payments "serves the salutary policy of facilitating performance under Chapter 13 plans by debtors who have demonstrated a questionable prepetition payment track record"); *In re McLaughlin*, 2007 WL 837239, at *3 (Bankr.N.D.Ohio 2007) ("In the court's experience, there have been multiple instances in which it has been impossible to determine who owned the mortgage and what the balance was."); *In re Vigil*, 344 B.R. 624, 628 (Bankr. D.N.M.2006) ("Policy reasons also favor payments through the trustee."); *In re Harris*, 200 B.R. 745, 749 (Bankr.D.Mass. 1996) (holding that mortgage payments were to be made through trustee despite delays).

Empirical data shows that the approach of the Local Rule and Procedures is in line with national practice. For the twelve-month period ending September 30, 2005, conduit payments were the practice among a majority of Chapter 13 trustees across the nation. Sixty percent of the trustees made at least some conduit payments during that period, and forty-seven percent used conduit payments "almost exclusively." *See* Gordon Bermant & Jean Braucher, *Making Post–Petition Mortgage Payments Inside Chapter 13 Plans: Facts, Law, Policy*, 80 Am. Bankr.L.J. 261, 270, 276 (2006). Trustees using conduit payments charged lower fees, both as a percentage and in dollars per case, than trustees who did not. *Id.*

Commentators have also recognized the reasons for a presumption in favor of conduit payments:

> There are many compelling reasons why Chapter 13 debtors with home mortgages should never make payments directly to the mortgage holder or mortgage servicer during the Chapter 13 case. Most of the good reasons for paying home mortgages through the Chapter 13 trustee are practical—based on decades of experience in hundreds of thousands of Chapter 13 cases. Creative Chapter 13 trustees have responded to the problems presented by the Code, and increasingly districts across the country are pulling home mortgage payments into the regular distribution routine. Districts that do so experience a reduction in litigation between debtors and mortgage holders, and trustees report greater stability in Chapter 13 plans that include home mortgages.

Keith M. Lundin, Chapter 13 Bankruptcy, § 147.1 at 147–1 (3d ed.2000 & Supp.2004). The same commentator summarized problems with direct payments:

> Many courts have learned from experience that Chapter 13 plans are rarely successful that provide for direct payment of a home mortgage that is in default.... The feasibility of direct payment plans is threatened because the debtor has discretion to pay the mortgage before remitting to the trustee....
> It is questionable whether a mortgage holder realizes any advantages from direct payment by the debtor. Chapter 13 debtors are not suddenly more reliable in making their monthly mortgage payments. The standing Chapter 13 trustee typically makes disbursements on the same day once each month. The mortgage holder will know within a few days of that day whether the debtor made a full payment to enable the trustee to make full payments to creditors. When all payments are made through the trustee, the mortgage holder can readily determine from the Chapter 13 trustee whether the debtor is meeting all obligations under the plan....

From the debtor's standpoint, direct payment of the home mortgage is a really bad idea, particularly if the plan also cures defaults. Direct payment may forfeit the protection of the automatic stay, may limit bankruptcy court jurisdiction over postconfirmation disputes between the debtor and a mortgage holder, and may preclude discharge of the debt.... [C]alculation of plan payments to cure default and maintain a mortgage is not simple. Allocation of incoming payments by the mortgage holder is even more difficult. Mortgage holders paid directly by the debtor often don't bother to file proofs of claim, leaving the debtor and the trustee no concrete starting point to account for payments during the years of the plan. Because mortgage servicing often changes several times during the years of the Chapter 13 case, the last hands holding the note won't have the whole picture. Only the Chapter 13 trustee can be counted on to have a complete and accurate record of everything paid on account of the home mortgage. And the trustee can serve this function only if *all* payments—regular installments and curing default—are made through the trustee.

*Id.*, § 147.1 at 147–5 to 147–6. Other commentators observe the practical benefits conduit payments provide to debtors:

By including post-petition payments in the monthly plan amount, debtors can more easily budget the costs of bankruptcy into their total monthly cash flow. This is especially true if the conduit payment is combined with a wage deduction order that includes the amount of the post-petition mortgage payment. The burden of record keeping, which can overwhelm some debtors, is eased. The debtors have placed a trustworthy fiduciary between themselves and their major creditor, an interposition that can become particularly valuable when the case completes or otherwise terminates because debtors are less likely to need further legal help in resolving disputes with mortgage companies and services.

Bermant & Braucher, 80 Am. Bankr.L.J. at 272–73.

In *Perez*, the court relied on the Code and the case law reading the Code as creating a presumption that the Chapter 13 trustee will make payments, including home mortgage payments. The court also relied on the empirical data and the results of the two-year actual experience in the Southern District of Texas in applying a presumption in favor of conduit payments rather than the prior practice of routinely allowing direct payments. The *Perez* court affirmed the Local Rule and Procedures against the statutory challenges raised by the debtors.

The bankruptcy judge held a hearing on the debtors' motion for relief from the requirement of making conduit payments through the trustee and, based on the evidence presented by the debtors, declined to waive the conduit-payment requirement for them. That evidence is set out below.

## B. The Evidence Presented by the Debtors

The debtors, Maria and Mario Perez, filed for bankruptcy under Chapter 13 on November 1, 2005. At that time, they were over $8,000 in arrears on their mortgage payments, approximately one year of payments. The debtors sought relief from the Local Rule and Procedures on the ground that they did not want to pay the additional trustee's fee for their home mortgage payment. The debtors argued that they had the necessary ability to make timely and properly recorded mortgage payments.

The debtors had owned a home in Houston, Texas for approximately sixteen years. Their mortgage payment, to ABRO ABN, was $663.49 per month, although the proof of claim indicates that the payment was reduced to $616.69 seven months before the debtors filed for bankruptcy. (Record at 58, 867). The debtors made timely payments for fifteen years. They fell behind after Maria Perez was diagnosed with breast cancer and was unable to work for approximately two years.

The debtors' Chapter 13 plan submitted on November 16, 2005 included disbursement of their monthly mortgage payments by the Chapter 13 trustee. (Record at 768–772) ("During the term of the plan, these payments will be made through the chapter 13 trustee and approved by the Court."). When the trustee tried to withdraw the first payment on December 1, 2005, there were insufficient funds in the account. (Docket Entry No. 11–2 at 8; Docket Entry No. 21 at 6). The debtors explain that because they intended to challenge the Local Rule, on advice of counsel they directly remitted their first postpetition mortgage payment to their mortgage lender, leaving only enough money in the account for the plan minus the mortgage payment. (Docket Entry No. 21 at 6; Record at 871–72).

On December 16, 2005, the debtors amended their proposed plan to remove the trustee as disbursing agent for the mortgage payment. (Record at 779–783). On December 19, 2005, the debtors filed a motion asking the bankruptcy court to relieve them of the obligation to pay their mortgage payment through the Chapter 13 trustee. (Id. at 735–40). The trustee responded on January 5, 2006. The bankruptcy court held an evidentiary hearing on the motion on January 30, 2006. Maria Perez testified at the hearing. She explained that the mortgage had been timely paid for fifteen years, during which both she and her husband worked. In either 2002 or early 2003, Maria Perez was diagnosed with breast cancer. (Id. at 869, 878). She did not work in 2003 and 2004 while undergoing cancer treatment. She returned to work as a nanny in January 2005. Although Maria Perez is able to work, she continues to receive medical treatment for breast cancer and diabetes, which requires out-of-pocket payments for doctors' visits and medications. Mario Perez is a delivery driver who worked in 2003 and 2004 but earned little, in part because of fuel expenses. (Id. at 869). It was primarily Maria Perez's inability to work for two years due to her illness that caused the debtors to fall behind on their mortgage payments.

At the hearing, Maria Perez stated that she wanted to pay the mortgage lender directly to avoid the payment of the trustee's fee, because "we can save money if we write the check." (Id. at 871). The parties assumed that the additional amount for disbursing the monthly mortgage payment through the trustee would be approximately $66.13 a month, based on a ten percent fee. Maria Perez did not testify that paying the trustee's fee each month would prevent her from being able to perform under the plan. Instead, she stated that "in our situation, it's a lot of money for us. If we can save, I appreciate it." (Id. at 873).

After the hearing, the trustee and the debtors filed supplemental briefs. The bankruptcy court issued a lengthy opinion upholding the Local Rule and the Procedures against the challenges raised by the debtors and finding no basis to exercise discretion to relieve the debtors from the requirement of making conduit payments through the trustee. Although the bankruptcy judge heard from several different debtors and examined each of the motions

in the *Perez* opinion, only Mario and Maria Perez have appealed from the court's order denying the motion and the refusal to confirm the plan with a direct-payment provision.

## II. The Applicable Legal Standards

■ In reviewing a bankruptcy court decision, a district court functions as an appellate court and applies the standards of review generally applied in federal courts of appeal. *In re Webb,* 954 F.2d 1102, 1103–04 (5th Cir.1992). A bankruptcy court's findings of fact are reviewed for clear error, with proper deference to that court's opportunity to make credibility determinations. FED. R. BANKR.P. 8013; *In re McDaniel,* 70 F.3d 841, 842–43 (5th Cir.1995). Legal conclusions are reviewed *de novo. Id.; In re Herby's Foods, Inc.,* 2 F.3d 128, 130 (5th Cir.1993).

## III. The Statutory Challenges to the Local Rule and Procedures

### A. Do the Local Rule and Procedures Violate the Bankruptcy Code Because They Require Conduit Payments?

■ The debtors argue that Local Rule 3105(b) violates the Code because "the practice is not determined on a case by case basis but is, for all purposes mandatory." (Docket Entry No. 21 at 6). The debtors argue that the Local Rule and Procedures "require that a specific form of a chapter 13 plan *must* be used by chapter 13 debtors.... The Bankruptcy Code does not contain any requirement for chapter 13 debtors to make their regular long term monthly mortgage payments through the chapter 13 trustee." (*Id.* at 17).[4] The amici also argue that the Local Rule is

mandatory and therefore violates the Bankruptcy Code. (Docket Entry No. 27 at 9).

This argument is not supported by the language of the Local Rule and Procedures or the record. As the bankruptcy court recognized, the Local Rule and the Procedures allow a debtor to seek relief from the presumption that the trustee will make the payments to the mortgage lender. Local Rule 1001(d) states that "[a] judge may modify the application of the rules in any case." Paragraph 12 of the Procedures states that "[t]hese procedures may be varied in a particular case only by order of the Court." The bankruptcy court recognized that it had discretion under the Local Rule and the Procedures to allow direct rather than conduit payments. *Perez,* 339 B.R. at 392, 408–414. Because the Local Rule and Procedures provide this flexibility, they are consistent with the Bankruptcy Code and with long-standing case law.

The Bankruptcy Code states that a debtor's Chapter 13 plan must "provide for the submission of all or such portion of future income of the debtor to the supervision and control of the trustee as is necessary for the execution of the plan." 11 U.S.C. § 1322(a)(1). The Code also provides that a court "shall" confirm a plan if a list of confirmation tests is met, including that the plan "complies with the provisions of this chapter." 11 U.S.C. § 1325(a)(1) (2006). Section 1325(a)(6) requires that the debtor "be able to make all payments under the plan and to comply with the plan." Section 1326(c) states, "[e]xcept as otherwise provided in the plan or in the order confirming the plan, the trustee shall make payments to creditors under the plan." The language "except as otherwise

---

4. The trustee argues that this argument is not properly before this court. (Docket Entry No. 26 at 16). However, the debtors made the same argument to the bankruptcy court. (Docket Entry No. 10–4 at 3).

provided ... in the order confirming the plan" has been read to allow debtors to make payments directly to creditors. In *Matter of Foster,* 670 F.2d 478 (5th Cir. 1982), the court held that although Chapter 13 ordinarily provides that funds be disbursed by the Chapter 13 trustee, a bankruptcy judge has discretion to allow direct disbursement by the debtor. Other cases are consistent. *See In re Gregory,* 143 B.R. 424, 426–27 (Bankr.E.D.Tex.1992) (upholding direct payment of priority IRS claim over the trustee's objection because the IRS agreed; the IRS was a sophisticated creditor that can protect itself, and because a single payment was involved rather than a series of payments that would benefit from trustee oversight and require continued work by the trustee); *In re Reid,* 179 B.R. 504, 508–509 (finding that the debtors' asserted interest in avoiding trustee fees was insufficient to overcome the potential abuse of the system allowed by direct payment and the Bankruptcy Code's preference for payment through a trustee); *Barber,* 191 B.R. at 885 (acknowledging that "numerous courts have recognized that decisions to allow a debtor to act as a disbursing agent for plan payments, thereby endangering the payment of fees and commissions necessary to the operation of the trustee program is a significant concern"); *In re Slaughter,* 188 B.R. 29, 31 (Bankr.D.N.D. 1995) (noting that "[a]lthough there is no express statutory prohibition preventing direct payments, the presumption has always been for distribution made by the trustee") (citing S.Rep. No. 989, 95th Cong., 2d Sess. 142 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787).

In *Perez,* the bankruptcy court interpreted section 1326(c) as consistent with the Local Rule and Procedures in presuming that most debtors will pay creditors through the trustee but recognizing that the bankruptcy court has the discretion to

allow debtors to pay creditors directly. 339 B.R. at 409. The court supported the Local Rule and Procedures with the general experience of the Southern District of Texas and other districts that direct mortgage payments cause problems for debtors and for the courts. There were numerous disputes over the status of the payments. Mortgage lenders and servicers regularly make errors; both servicers and debtors are poor record-keepers, so that many debtors are not be able to make all payments on a direct basis without creating issues about whether the debtor is current on the loan. *Id.* at 397. The *Perez* court also gave reasons specific to the particular debtors for refusing to confirm their plan providing for direct payments, determining that the proposed plan was not feasible based in part on the debtors' poor record in making timely payments. *Id.* at 410–412.

As the Fifth Circuit made clear in *Foster,* while the Bankruptcy Code allows a bankruptcy court to depart from the general rule that the trustee is to make payments to creditors, the Code creates a presumption—not an absolute requirement—that most payments will be made through the trustee. 670 F.2d at 486; *see also In re Aberegg,* 961 F.2d 1307, 1309 (7th Cir.1992). The Local Rule and the Procedures are consistent with the Bankruptcy Code because they allow the bankruptcy court to relieve the debtor from the presumption that home mortgage loans will be paid through the trustee.

**B. Do the Local Rule and Procedures Violate the Bankruptcy Code Prohibition Against Modifying a Mortgage Contract?**

█ The debtors argue that the Local Rule and Procedures violate the Bankruptcy Code, 11 U.S.C. § 1322(b)(2), because conduit payments through the trustee

modify the terms of the mortgage loan. (Docket Entry No. 21 at 14). The debtors argue that "[i]n most cases, the chapter 13 trustee will not be able to make a debtor's first post-petition regular monthly mortgage payment on time." (*Id.*). The amici make a similar argument. (Docket Entry No. 27).

The Bankruptcy Code states:

> [The plan may] modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims.

11 U.S.C. § 1322(b)(2). The Bankruptcy Code generally prohibits modification of the rights of secured creditors claiming the debtor's principal residence as collateral for a long-term loan. The debtor must pay the full debt amount, even if the collateral is worth less. The home mortgage exception to the power to modify secured loans typically requires a Chapter 13 debtor to cure defaults and maintain mortgage payments during the life of the plan. Section 1322(b)(5) permits plan provisions for curing defaults on mortgage loans within a "reasonable time" and for maintaining regular payments if the last one is due after the final plan payment. 11 U.S.C.A. § 1322(b)(5) (stating that the plan may "provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any . . . secured claim on which the last payment is due after the date on which the final payment under the plan is due.").[5] A prefiling default may be cured, undoing acceleration and preventing foreclosure. In *Nobelman v. American Savings Bank,* 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993), the Supreme Court read the antimodification provision of section 1322(b)(5) broadly and held that section 1322(b)(2) prohibits bifurcation of an undersecured claim through a Chapter 13 plan when the only collateral is real property that is the debtor's principal residence.

In this case, the bankruptcy court carefully considered the argument that the Local Rule and Procedures worked an impermissible modification of the mortgage contract.[6] In rejecting the argument, the court carefully examined the relevant paragraphs of the Procedures and Uniform Plan. Paragraph 11 of the Procedures states:

> Amounts received by the holder of the ongoing mortgage prior to confirmation must be applied by the holder to the next payment due without penalty of the terms of the note; or the holder must notify the trustee in writing that it waives all late charges that accrue after the order for relief in this case. Amounts received by the holder of the ongoing mortgage after confirmation must be applied in accordance with the plan.

---

5. [A plan may,] notwithstanding paragraph (2) of this subsection [the antimodification provision], provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due.

11 U.S.C. § 1322(b)(5).

6. The bankruptcy court noted that the debtors lacked standing to assert a claim under 11 U.S.C. § 1322(b)(2), which protects the rights of secured lenders, not debtors. (Docket Entry No. 11–2 at 22). Neither the debtors nor the amici discussed this aspect of the ruling. The bankruptcy court ruled on the debtors' argument on the merits, despite finding a lack of standing.

*Perez,* 339 B.R. at 403. The relevant section of the Uniform Plan reads in part as follows:

> The Secured Claims held by secured creditors holding a claim secured only by a security interest in real property that is the debtor(s)' residence (other than the arrearage claims set forth in the above table) and other claims treated under § 1322(b)(5) will be paid in accordance with the pre-petition contract held by the holder of the secured claim. The first such payment is due on the first payment due date under the promissory note (after the date this bankruptcy case was filed). During the term of the plan, these payments will be made through the chapter 13 trustee in accordance with procedures adopted from time to time by the chapter 13 trustee and approved by the Court. Each holder of a claim that is paid pursuant to this paragraph must elect to either (i) apply the payments received by it to the next payment due without penalty under the terms of the holder's pre-petition note; or (ii) waive all late charges that accrue after the order for relief in this case. Any holder that fails to file an affirmative election within 30 days of entry of the order confirming this plan has waived all late charges that accrue after the order for relief in this case. Notwithstanding the foregoing, the holder may impose any late charge that accrues following an event of default of a payment due under paragraph 1 of this Plan.

*Id.* at 403.

The amici note that the trustees' disbursement schedules might not correspond to the due date set by mortgage contracts. One trustee in the district, for example, distributes on January 18, 2007, February 15, 2007, and March 22, 2007. (Docket Entry No. 27 at 10). The amici argue that they are forced either to waive late charges or apply the payment to the next payment cycle without penalty, an election that impermissibly modifies their mortgage contracts. (*Id.* at 15).

As thoroughly discussed by the bankruptcy court, the Procedures and Uniform Plan present the mortgagee with two options. The first allows the mortgagee to assess late charges for a missed payment if the next payment is applied to the next installment. *Perez,* 339 B.R. at 403–04. If the mortgagee chooses this first option, the debtor will still have to pay both the missed payment and late charges on that payment, giving the mortgagee what it bargained for. Under this first option, the mortgagee is required to apply the late payment to the next payment due. The bankruptcy court held that this requirement was not an improper modification because the mortgagee would recover the late charges for the late payment. *Id.* at 404. The Procedures and Plan allow a second option, under which the mortgage company may apply a payment to a prior missed payment, but this choice waives postpetition late charges for the missed payment. This option was intended to prevent a mortgage company from not assessing late charges over the life of the plan and then asserting them at the end of that plan. *Id.* The bankruptcy court held that this option was not a modification of the mortgage payments but rather a "preventative measure" to protect debtors from facing late charges at the end of the plan even if they made all the plan payments to the trustee. *Id.*

 The bankruptcy court held that the Local Rule and Procedures did not *impermissibly* modify the rights of mortgagees under section 1322(b)(5). As the Supreme Court held in *Rake v. Wade,* 508 U.S. 464, 473, 113 S.Ct. 2187, 124 L.Ed.2d 424 (1993), when a plan allows for the curing of

a default and reinstates payments on a claim, the plan may modify the creditor's contractual rights to the extent they arise from the default. The Court explained:

> When a plan cures a default and reinstates payments on a claim, the creditor's contractual rights arising from the default—which in this case included the right to declare all payments due and payable, accelerate the debt, possess the property, collect rents generated by the property, and foreclose on the property, are abrogated and therefore "modified." These modifications are allowed under § 1322(b)(5) "notwithstanding" the fact that § 1322(b)(2) generally prohibits the modification of the rights of home mortgage holders. Petitioners' construction of § 1322(b)(2) also leads to the incongruous result that only home mortgage claims would be denied the benefits of § 1325(a)(5).

*Rake v. Wade*, 508 U.S. at 473 at n. 9, 113 S.Ct. 2187 (citations omitted).

The bankruptcy court concluded that to the extent the Local Rule, Procedures, and Uniform Plan might result in a modification of a mortgage contract, they did so only by allowing the debtor to cure the default occurring as a result of the mortgagee receiving the first monthly payment from the trustee after the due date and grace period had passed. The mortgagee receives the payment, but not within the contractual deadline. The mortgagee is, however, allowed to assess late charges if the trustee's first payment is received after the contract date. The mortgagee is required to apply future payments to the next payment due, without penalty, curing the default as permitted by section 1322(b)(5).

To the extent the Local Rule, Procedures, and Uniform Plan allow the trustee to make mortgage payments on a different date than specified in the mortgage contract, that is not an impermissible modification under Fifth Circuit precedent. The court had held in *In re Lee*, 167 B.R. 417, 419 (Bankr.S.D.Miss.1992), *aff'd*, 22 F.3d 1094 (5th Cir.1994), that discrepancies caused by the timing of payments to the Chapter 13 trustee and the trustee's payments to the mortgage lenders did not impermissibly modify a mortgage contract. The court cited the Fifth Circuit's decision in *Nobleman v. American Savings Bank*, 968 F.2d 483 (5th Cir.1992), *aff'd*, 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993), and *Grubbs v. Houston First American Savings Ass'n*, 730 F.2d 236 (5th Cir.1984), in which the court allowed payments made through the Chapter 13 trustee with no suggestion that the payments were improper because they were made on dates different from the due dates in the contract.

The bankruptcy court properly held that the Local Rule, Procedures, and Uniform Plan did not modify the mortgage contract lien in ways prohibited by section 1322(b)(5).

## C. Do the Local Rule and Procedures Violate the Bankruptcy Code by Allowing Preconfirmation Payments by the Trustee?

■ The appellants argue that the Local Rule and Procedures violate the Bankruptcy Code, 11 U.S.C. § 1326(a)(2), which states that "[a] payment made under paragraph (1)(A) [to the trustee by the debtor under 11 U.S.C. § 1326(a)(1)] shall be retained by the trustee until confirmation or denial of confirmation." The Procedures include a provision authorizing trustees to distribute to the mortgage lender mortgage payments received from the debtor after the petition is filed but before plan is

confirmed.[7] The debtors renew the argument they made in the bankruptcy court that this provision violates section 1326(a)(2) by authorizing the trustee to distribute funds before the plan is confirmed. The debtors argue that the trustee cannot pay the home mortgage before the plan is confirmed under section 1326(a)(2), but if the trustee does not pay the mortgage until confirmation, the payment will be late. (Docket Entry No. 21 at 7).

Section 1326(a)(2) of the Bankruptcy Code section states that a trustee "shall" retain certain payments received from the debtor until the plan is confirmed:

> A payment *made under paragraph (1)(A)* shall be retained by the trustee until confirmation or denial of confirmation. If a plan is confirmed, the trustee shall distribute any such payment in accordance with the plan as soon as is practicable. If a plan is not confirmed, the trustee shall return any such payments not previously paid and not yet due and owing to creditors pursuant to paragraph (3) to the debtor, after deducting any unpaid claim allowed under section 503(b).

11 U.S.C. § 1326(a)(2) (emphasis added).

The bankruptcy court drew on the phrase "payment made under paragraph (1)(A)," which refers to payments the debtor makes to the trustee under section 1326(a)(1)(A). That section addresses payments "proposed by the plan to the trustee." The bankruptcy court distinguished between payments under section 1326(a)(1)(A)—which the trustee must retain until confirmation—and adequate protection payments under 11 U.S.C. §§ 1303, 363(e), and 361—which need not be retained. The bankruptcy court concluded that the Local Rule and Procedure authorizing the trustee to make postpetition, preconfirmation mortgage payments did not violate the Code because they were not "plan payments" but rather "adequate protection" payments. *Id.* at 397–400.

Section 1303 states that "the debtor shall have, exclusive of the trustee, the rights and powers of a trustee under section . . . 363(e) . . . of this title." Section 363(e) states that on the request of a lien holder, the court "shall prohibit or condition" the debtor's right to use property "as is necessary to provide adequate protection of such interest." Section 361 addresses adequate protection payments. Section 361 provides:

> When adequate protection is required under section 362, 363, or 364 of this title of an interest of an entity in property, such adequate protection may be provided by—

7. The Southern District of Texas Chapter 13 Home Mortgage Payment Procedures state in relevant part:

The debtor's plan payments to the chapter 13 trustee shall include the amount due on the debtor's regular monthly mortgage installments for a claim secured by a security interest in real property that is the debtor's principal residence pursuant to the terms of 11 U.S.C. § 1322(b)(5)1 ("the ongoing mortgage") unless there is no default on the mortgage as of the petition date, the date of plan confirmation and the date of the filing of a plan modification. The following requirements will apply to all cases in which the Chapter 13 Plan deals with an arrearage:

. . .

(3) Subject to these procedures, the trustee is authorized to disburse funds in payment of all regular contractual installment payments and other charges arising pursuant to the claim of a creditor that become due following the commencement of a case pursuant to the terms of the note and security agreement applicable to the claim. Disbursements should commence as soon as is practicable. If the trustee has available funds, the initial disbursement should precede the hearing on plan confirmation.

(1) requiring the trustee to make a cash payment or periodic cash payments to such entity, to the extent that the stay under section 362 of this title, use, sale, or lease under section 363 of this title, or any grant of a lien under section 364 of this title results in a decrease in the value of such entity's interest in such property;

(2) providing to such entity an additional or replacement lien to the extent that such stay, use, sale, lease, or grant results in a decrease in the value of such entity's interest in such property; or

(3) granting such other relief, other than entitling such entity to compensation allowable under section 503(b)(1) of this title as an administrative expense, as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property.

11 U.S.C. § 361. The bankruptcy court held that "a Chapter 13 debtor (just like a Chapter 11 debtor-in-possession) makes adequate protection payments pursuant to a court order under these three sections, not pursuant to a proposed plan. Because § 1326(a)(1) refers to payments 'proposed by the plan,' and not to court-ordered adequate protection payments for real estate lien holders, it follows that § 1326(a)(2) is inapplicable to pre-confirmation adequate protection payments to real estate lien holders; and because of its inapplicability, this section may not be used to bar the trustee from making pre-confirmation adequate protection payments to mortgagees." *Perez*, 339 B.R. at 399.

The Bankruptcy Code does not specifically define "adequate protection payments." Section 361 recognizes three non-exclusive forms of adequate protection that may apply to the debtor's use of property in which a secured creditor has an interest: cash payments to the extent the collateral has declined in value, extra collateral to compensate for such a decline, or other relief "as will result in the realization by [the secured party] of the indubitable equivalent of such entity's interest in such property." 11 U.S.C. § 361. The bankruptcy court recognized that typically adequate protection means that the debtor must make preconfirmation payments to protect the claim holder from depreciation of its collateral pending plan confirmation. As applied to real estate, such adequate protection payments might take the form of a requirement that hazard insurance or real estate taxes be paid before confirmation. *See, e.g., In re Pinto*, 191 B.R. 610, 612 (Bankr.D.N.J.1996). The bankruptcy court in *Perez* recognized that such adequate protection payment is different from an installment payment due under a mortgage contract. An installment payment which includes interest does not correspond to a decline in value of collateral resulting from the debtor's use before plan confirmation.

The *Perez* opinion properly rejected the application of sections 3 61(1) and (2) because they are explicitly based on protection against a decline in the collateral's value. Instead, the court relied on section 361(3), reasoning that "when a mortgagee in a Chapter 13 receives the current monthly payment, as well as payment of arrearages under the plan, this arrangement constitutes the 'indubitable equivalent' of the mortgagee's interest under § 361(3)." 339 B.R. at 400. In so doing, the court applied section 361(3) in a way that is not based on protection against depreciation.

The term "indubitable equivalent" is not defined in Bankruptcy Code but is drawn from Judge Learned Hand's opinion in *In re Murel Holding Corp.*, 75 F.2d 941 (2d Cir.1935). *See* S.REP. No. 989 at 127 (1978), 1978 U.S.C.C.A.N. 5913 ("The indubitable equivalent language is intended to

follow the strict approach taken by Judge Learned Hand in *In re Murel Holding Corp.*"). In *Murel,* an insurance company held a mortgage and attempted to foreclose when the owners defaulted. The owners obtained an *ex parte* stay after filing a bankruptcy petition. They proposed a plan requiring the mortgage lender to forego amortization payments and extend the mortgage due date while allowing the mortgage lender to receive interest. The mortgage lender moved to vacate the stay and objected that the plan failed to provide adequate protection. Judge Hand acknowledged that the bankruptcy court had the power to confirm a plan over the creditor's objection if the plan provided "adequate protection for the realization by them of the full value of their interest, claims, or liens." *Id.* at 943. The court reversed the bankruptcy court's stay order because the mortgagee was entitled to its amortization payments or a "substitute of the most indubitable equivalence," and the plan did not offer "some reasonable assurance that a suitable substitute will be offered" for the scheduled amortization payments. *Id.* at 942–43.

The *Perez* court distinguished between payments under section 1326(a)(1)(A) and adequate protection payments. Under the BAPCPA, section 1326(a)(1)(A) payments fell into three categories: payments to the trustee in the amount "proposed by the plan" (§ 1326(a)(1)(A)); payments "directly to the lessor" in the amount "scheduled in a lease of personal property" (§ 1326(a)(1)(B)); and "adequate protection" payments "directly to a creditor holding an allowed claim secured by personal property ... for that portion of the obligation that becomes due after the order for relief." (§ 1326(a)(1)(C)). The last two are forms of adequate protection payments to particular creditors—lessors of personal property and some purchase money secured creditors. While section 1326(a)(1)(C) does not govern preconfirmation adequate protection payments for holders of liens on real property, the section is labeled as an adequate protection payment. After the BAPCPA, there appears to be two kinds of "adequate protection" payments under the Code: the "classical" adequate protection addressed in section 361, which is tied to depreciation, and the types of adequate protection for the specific creditors addressed in sections 1326(a)(1)(B) and (C), which are tied to installment or contractual obligations rather than to a decline in collateral value due to the debtor's use. The *Perez* court relied on adequate protection under section 361, but did not limit it to protection against depreciation or decline in value. Instead, the *Perez* court construed it as broadly as it is used in section 1326(a)(1)(B) and (C), while recognizing that those sections do not apply to real estate mortgage loans.[8]

---

8. The *Perez* court cited one case that applied section 361's "indubitable equivalent" provision to mortgage loan installment payments. The *Perez* court cited *Commonwealth of Pennsylvania State Employees Retirement Fund v. Roane,* 14 B.R. 542, 544 (D.C.Pa.1981), which interpreted "indubitable equivalent" to include a Chapter 13 debtor's monthly mortgage payment as well as the arrearage paid under the plan. In that case, the court denied the mortgage company's motion for relief from the bankruptcy stay on the basis that the installment mortgage payments and arrearage payments under the plan were adequate protection. The court noted that there was an equity cushion of $7,500 but recognized that it might decrease over time. *Id.* at 544–545. The court found that "the proposed payment of the current monthly mortgage payments, as well as the payment of the arrearages under the Chapter 13 plan, would protect against such an adverse decline in the surplus value." *Id.* at 545. "Such an arrangement constitutes the 'indubitable equivalent' of the mortgagee's interest under § 361(3). Therefore, the payment of the mortgage payments outside of the plan and

It is unclear that payments under section 1326(a)(1)(A) categorically exclude adequate protection payments under section 361. Because section 1326(a) requires that the Chapter 13 debtor begin making payments called for by the plan within thirty days of filing the plan, many debtors will satisfy adequate protection requirements by beginning to make payments to the trustee in the amount called for in the proposed plan. Adequate protection payments to a Chapter 13 trustee accounted for in a proposed plan have been recognized as advantageous for both debtors and creditors.[9] The difference between payments called for in the plan under section 1326(a)(1)(A) and adequate protection payments is unclear, particularly when the term "adequate protection" is used as broadly as the *Perez* court used it. The *Perez* court defined the term to include installment contract payments of prepetition contracts that included interest and was not limited to protection against the decline in the value of collateral resulting from the debtor's use before confirmation.

Moreover, preconfirmation payments to the trustee under section 1326(a)(1) are subject to court review under section 1326(a)(3), which states: "Subject to section 363, the court may, upon notice and a hearing, modify, increase, or reduce the payments required under this subsection pending confirmation of a plan." The introductory cross-reference, "subject to section 363," would appear to incorporate the statutory powers and conditions on the use of property. For example, creditors often use section 363(e) to impose on debtors the duty to provide adequate protection of an interest in property the debtor proposes to use during the bankruptcy case. Section 363(e) incorporates the traditional adequate protection concepts of section 361. Adequate protection under section 1326 appears to cover both adequate protection as described in section 1326(a)(1)(C) and the traditional forms incorporated by the cross-references in section 1326(a)(3). Adequate protection under section 361 applies under section 1326(a)(3) when there is a motion to the court to modify, increase, or reduce payments required by "this subsection" pending plan confirmation. After the BAPCPA changes, even recognizing that section 1326(a)(1)(C) does not apply to preconfirmation adequate protection payments for holders of liens on real property, "payments under the plan" under section 1326(a)(1)(A) may not categorically exclude adequate protection payments.

The *Perez* court distinguished between payments under section 1326(a)(1)(A) and adequate protection payments because the Code makes payments under section 1326(a)(1)(A) subject to section 1326(a)(2), which states that the trustee "shall" retain

---

the payment of the arrearage under the plan, together with the existing equity cushion, 'adequately protect' the mortgagee's interest." *Id.* This case does not hold that standing alone, installment mortgage payments are adequate protection under section 361. They are not the "indubitable equivalent" of what the mortgage lender is entitled to receive; they *are* what the mortgage lender is entitled to receive.

9. Trustee disbursement of adequate protection payments outside a proposed plan may be risky for lienholders because they lose the value of the adequate protection payments until actually received from the trustee, and if the plan is not confirmed, the lienholder cannot receive the payment and often cannot show administrative expenses. LUNDIN, CHAPTER 13 BANKRUPTCY § 48.1 at 48–8. Direct adequate protection payments by debtors are "just not a good idea for the debtor, for the trustee or for others who may have administrative claims if the case fails before confirmation. Adequate protection payments to the Chapter 13 trustee accounted for in the proposed plan set a better pattern for the future of the case." *Id.*

such payments until plan confirmation. Section 1326(a)(2) specifically recognizes that a trustee may distribute some funds received from the debtor before plan confirmation by acknowledging that some payments will have been previously paid. Section 1326(a)(2) does not state that if a plan is not confirmed, the trustee must return all payments to the debtor. Instead, it states that the trustee must return only those payments "not previously paid and not yet due and owing to creditors pursuant to paragraph 3 to the debtor." The reference to "paragraph 3" is confusing. It apparently refers to section 1326(a)(3), which authorizes a court to modify, increase, or reduce preconfirmation plan payments required under "this subsection." Read literally, the phrase in section 1326(a)(2) stating that the obligation to return payments "not previously paid and not yet due and owing to creditors pursuant to paragraph (3)" applies only if the bankruptcy court has entered an order that modified payments otherwise required by "this subsection." If there is no such court order, then there are no payments "due and owing" under section 1326(a)(3). Commentators have questioned whether the "paragraph 3" cross-reference is a mistake. *See* LUNDIN, CHAPTER 13 BANKRUPTCY § 404.1 at 402–2; David Gray Carlson, *Cars and Homes in Chapter 13 After the 2005 Amendments to the Bankruptcy Code*, 14 AM. BANKR.INST. L.REV. 301, 325–26 (2006). One commentator has suggested that the reference to paragraph 3 was intended to be a reference to section 1326(a)(1)(C), which would permit the trustee to make payments before confirmation to the creditors listed in that paragraph. Carlson, 14 AM. BANKR.

INST. L.REV. at 325–26. The Code itself does not, however, contain such a limitation. The result is a statement in section 1326(a)(1)(A) that preconfirmation payments made to the trustee as proposed by the plan "shall" be retained by the trustee, but it is unclear what preconfirmation payments may be disbursed by the trustee and not returned to the debtor if the plan is not confirmed.

In short, it is unclear whether it is proper to characterize preconfirmation payments of monthly mortgage payments as adequate protection payments.[10] But it is also unclear that section 1326(a)(2) prohibits preconfirmation conduit payments of mortgage installments to the lenders. As the bankruptcy court correctly noted, because the Southern District of Texas does not delay confirmation until after the claims-bar date, but instead reaches confirmation soon after the section 341 meeting, preconfirmation payments are a very small part of the payments addressed by the Local Rule and Procedures. Because a confirmation hearing must be held within eighty-five days after a case is filed and will often be held earlier, in most cases there will only be one or two preconfirmation mortgage payments. *Perez,* 339 B.R. at 397. As a result, the debtors' argument that the Code precluded the trustee from disbursing postpetition, preconfirmation mortgage payments did not support the debtors' proposed solution that the debtors rather than the trustee must make some or all of the mortgage payments, despite the risks of that approach.

In a footnote, the *Perez* court suggested that relying on 11 U.S.C. § 105(a) would achieve the express command of section

**10.** *See In re Brown,* 348 B.R. 583 (Bankr. N.D.Ga.2006) (preconfirmation adequate protection payments may not include an interest component because such payments compensate for depreciation in collateral and apply only to principal); *In re Denton,* 2007 WL 1701921 (Bankr.S.D.Ga.2007) (preconfirmation adequate protection applies only to principal); Carlson, 14 AM. BANKR.INST. L.REV. at 332.

1322(b)(2) and the Code's presumption in favor of payments through the trustee without using the "indubitable equivalent" form of adequate protection under section 363(3). "[W]here an express statute such as § 1322(b)(2) seems to require a specific result—here, that the mortgagee receive its normal monthly payments—the use of § 105 to ensure that these payments are made during the time period between the date of the petition and the date of the plan confirmation seems quite appropriate." 336 B.R. at 401, n. 17.

Section 105(a) allows a court to issue any order "that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Reliance on this provision is appropriate when an express statute (section 1322(b)(2)) requires a specific result (providing the mortgagee with its normal monthly payments after the petition and before confirmation), and when the Code presumptively favors a particular approach (payments through the Chapter 13 trustee). Since the *Perez* decision was issued, the Supreme Court has issued an opinion that supports the bankruptcy court's approach.

In *Marrama v. Citizens Bank of Massachusetts*, —— U.S. ——, 127 S.Ct. 1105, 166 L.Ed.2d 956 (2007), the Supreme Court directly addressed the equitable powers of the bankruptcy court under section 105(a) for the first time in over a decade. The case resolved a split in the lower courts over whether section 706(a) provides a debtor an absolute, one-time right to convert a Chapter 7 case to Chapter 13 or permits a bankruptcy court to limit the conversion right when the debtor is in bad faith. The Court followed the majority of cases that held that the right is subject to a bad-faith exception.[11] The *Marrama* majority held that "the broad authority granted to bankruptcy judges to take any action that is necessary or appropriate to 'prevent an abuse of process' described in § 105(a) of the Code, is surely adequate to authorize an immediate denial of a motion to convert filed under § 706." *Id.* at 1111–12. The dissent viewed section 706(a) as providing debtors with an absolute right to convert a Chapter 7 to a Chapter 13 and concluded that an application of section 105(a) vitiating that right would contravene the Code. The majority, however, took the view that section 706(a) is equivocal and that section 105(a) was properly applied to achieve a result consistent with the Code, taking into account the need to prevent abuses of the bankruptcy process. *Id.* at 1112.

Twenty years earlier, the Supreme Court decided *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 108 S.Ct. 963, 99 L.Ed.2d 169 (1988), holding that a bankruptcy court cannot use its general equitable powers to confirm a reorganization plan in contravention of the absolute priority rule. *Id.* at 206, 108 S.Ct. 963. The

---

**11.** The Court conditioned the Chapter 7 debtor's seemingly unconditional right under 11 U.S.C. § 706(a) to convert his case to a case under Chapter 13 to the extent the debtor had engaged in prepetition bad faith conduct that would establish "cause" warranting dismissal or reconversion of his Chapter 13 case and making him unqualified to be a debtor under Chapter 13. The Supreme Court ruled that what appeared to be an unfettered right under 11 U.S.C. § 707(a) was circumscribed. The Court stated, "In practical effect, a ruling that an individual's Chapter 13 case should be dismissed or converted to Chapter 7 because of prepetition bad faith conduct, including fraudulent acts committed in an earlier Chapter 7 proceeding, is tantamount to a ruling that the individual does not qualify as a debtor under Chapter 13. That individual, in other words, is not a member of the class of 'honest but unfortunate debtor[s]' that the bankruptcy laws were enacted to protect." *Marrama*, 127 S.Ct. at 1111 (citing *Grogan v. Garner*, 498 U.S. 279, 287, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991)).

Supreme Court stated that "whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code." *Id.* In *Marrama,* the Court did not overrule *Ahlers.* In *Marrama,* the Supreme Court recognized that Congress can restrict equitable powers by clear and unambiguous drafting of Code provisions. The *Marrama* majority reasoned that "nothing in the text of either § 706 or § 1307(c) ... limits the authority of the court to take appropriate action in response to fraudulent conduct by the atypical litigant who has demonstrated that he is not entitled to the relief available to the typical debtor." 127 S.Ct. at 1106. The dissenting Justices disagreed as to the conclusion that the Code sections at issue were ambiguous or unclear. Instead, they concluded that the Code sections specifically prohibited the procedure followed by the bankruptcy court in *Marrama* and precluded reliance on section 105(a).

*Marrama* upheld a pragmatic remedy fashioned by a bankruptcy judge under section 105(a) to achieve a result that the Code clearly required, despite the apparently inconsistent approach of another Code section that was unclear or ambiguous. In this case, a similar application of section 105(a) is warranted. Section 1322(b)(2) expressly requires that the mortgagee receive its normal monthly payments. Section 1326(a)(1) states that the debtor "shall" begin making payments not later than 30 days after filing the plan and provides that the court may order "otherwise," which allows the court to require conduit payments through the trustee. Section 1326(a)(2) states that the trustee "shall" retain payments "proposed by the plan" made by the debtor to the trustee before confirmation. Section 1326(c) states that the trustee "shall" make pay-

ments to creditors "under the plan." The Code prohibits modifying the rights of mortgage lenders and creates a presumption in favor of payments disbursed through the trustee. The courts recognize the many reasons that conduit payment of mortgage installments protects debtors, creditors, and the integrity of the bankruptcy process. The interplay among the provisions that protect mortgage lenders' rights, those that authorize conduit payments, and those that require the trustee to retain some—but not all—payments by the debtor is unclear. Section 105(a) properly applies to allow the trustee to disburse the one or two monthly mortgage payments that are due postpetition but preconfirmation.

The critical aspect of the payments at issue is not whether they are "under the plan" or "adequate protection" payments, but rather that they are simply conduit payments. Given the clear and explicit command of section 1322(b) to preserve the rights of holders of mortgage loans on the debtor's principal residence, and given the ambiguous interplay of sections 1326(a)(1) and (2), the bankruptcy court's reasoned decision to allow the trustee to distribute mortgage payments received from the debtor in the short period between filing the petition and confirming the plan as well as after plan confirmation was an appropriate application of section 105(a), consistent with *Marrama's* approach.

This court affirms the bankruptcy court's conclusion that the Local Rule and Procedures authorizing the trustee to disburse preconfirmation mortgage payments made by the debtor did not make the Local Rule and Procedures invalid either facially or as applied to the debtors at issue.[12]

---

12. The debtors filed for bankruptcy on No- vember 1, 2005. The debtors claim that they

## D. Do the Local Rule and Procedures Violate the Priority Payment Provisions of the Bankruptcy Code?

■ The appellants also challenge the bankruptcy court's conclusion that the Local Rule and Procedures do not violate the Code's priority scheme by allowing home mortgage payments to be made ahead of administrative claims, including—indeed, primarily consisting of—the debtors' attorney's fees. The appellants argued that under section 1326(b)(1), the debtors' attorney's fees must be fully paid before any other creditor, whether secured or unsecured, including the mortgage lender. (Docket Entry No. 21, at 15). The amici argued that a mortgagee's rights cannot be subordinated to the payment of the debtor's attorney's fees. (Docket Entry No. 27 at 19–20). The trustee argues that Chapter 13 does not require that a debtor's attorney's fees must be paid in full before each installment payment to the mortgage lender. (Docket Entry No. 26 at 11–12).

The following provisions of the Bankruptcy Code, as amended by BAPCPA, are relevant. Section 507(a) states in part:

(a) The following expenses and claims have priority in the following order:

(1) First:

(A) Allowed unsecured claims for domestic support obligations

. . . .

(C) If a trustee is appointed or elected under section 701, 702, 703, 1104, 1202, or 1302, the administrative expenses of the trustee allowed under paragraphs (1)(A), (2), and (6) of section 503(b) shall be paid before payment of claims under subparagraphs (A) and (B), to the extent that the trustee administers assets that are otherwise available for the payment of such claims.

(2) Second, administrative expenses allowed under section 503(b) of this title, and any fees and charges assessed against the estate under chapter 123 of title 28.

11 U.S.C. § 507(a). Attorney's fees are administrative expenses allowed under section 503(b) as "reasonable compensation for professional services rendered by an attorney or an accountant of an entity whose expense is allowable." 11 U.S.C. § 503(b)(4).

Section 1322 sets forth requirements for what a Chapter 13 Plan must and may contain. That section states in relevant part:

(a) The plan shall—

(1) provide for the submission of all or such portion of future earnings or other future income of the debtor to the supervision and control of the trustee

---

were required to remit a mortgage payment before December 1, 2005 as well as the first plan payment (including an additional mortgage payment) on December 1, 2005. (Docket Entry No. 21 at 8–9). The record does not support this assertion. Maria Perez testified as follows before the bankruptcy court:

Q: Ma'am, isn't it true that the first ACH payment to the trustee was returned for insufficient funds?

A: Oh, this is for this year, for January, because the first payment is in December. What happened is Mr. Baker [her attorney] tell [sic] my husband and me to send direct-

ly to the mortgage, the payment, and the trustee, only we pay the trustee $375, and we signed papers for the trustee trying to take the money, the 20 to each month, but it's only $375. And the trustee trying [sic] to take $918, I think so, and there's not enough money because we send something, 600—and something for the mortgage.

(Record at 871–72). The record does not show that the trustee made a mortgage payment in November or December 2005 or whether the debtors made the November 2005 payment directly.

as is necessary for the execution of the plan;

(2) provide for the full payment, in deferred cash payments, of all claims entitled to priority under section 507 of this title, unless the holder of a particular claim agrees to a different treatment of such claim;

(3) if the plan classifies claims, provide the same treatment for each claim within a particular class; and

(4) notwithstanding any other provision of this section, a plan may provide for less than full payment of all amounts owed for a claim entitled to priority under section 507(a)(1)(B) only if the plan provides that all of the debtor's projected disposable income for a 5–year period beginning on the date that the first payment is due under the plan will be applied to make payments under the plan.

(b) Subject to subsections (a) and (c) of this section, the plan may . . .

(4) provide for payments on any unsecured claim to be made concurrently with payments on any secured claim or any other unsecured claim; . . .

11 U.S.C. § 1322.

Section 1326 concerns the order of payments in a Chapter 13 Plan. That section states:

(b) Before or at the time of each payment to creditors under the plan, there shall be paid—

(1) any unpaid claim of the kind specified in section 507(a)(2) of this title.

11 U.S.C. § 1326(b).

Section 1326(b)(1) requires payment of administrative expenses "[b]efore or at the time of each payment to creditors under the plan." Section 507(a)(2) provides that administrative expenses allowed under section 503(b) are to be paid "[b]efore or at the time of each payment to creditors under the plan." The appellants argue that this is properly read " 'before or at the time of each payment to creditors under the plan' so that the § 507(a)(2) claim is fully paid before other creditors, secured, priority, or unsecured, are paid." (Docket Entry No. 21 at 15).

The courts are divided over whether section 1326(b)(1) requires that section 507(a)(2) claims be paid in full before payment of other claims. A number of courts hold that a partial payment of section 507(a)(2) expenses is all that is required by section 1326(b)(1). *See In re Balderas,* 328 B.R. 707, 717 (Bankr.W.D.Tex.2005) (recognizing that requiring full payment of allowed administrative expense claims in front of other creditors would conflict with the Code section requiring a plan to provide for full payment in deferred cash payments of all claims entitled to priority under section 507); *In re Parker,* 15 B.R. 980, 983 (Bankr.E.D.Tenn.1981) (secured claims have priority over administrative expense claims); *In re Pappas & Rose, P.C.,* 229 B.R. 815, 820 (W.D.Okla.1998); *In re Cook,* 205 B.R. 437, 443 (Bankr. N.D.Fla.1997); *In re Aldridge,* 335 B.R. 889 (Bankr.S.D.Ala.2005). Other courts— including bankruptcy courts in the same district—disagree. *See, e.g., In re DeSardi,* 340 B.R. 790, 808 (Bankr.S.D.Tex.2006) (section 1326(b)(1) requires full payment of administrative claims before or when general payments commence under a Chapter 13 plan, but adequate protection payments are senior in priority to those fees); *In re Harris,* 304 B.R. 751, 758 (Bankr. E.D.Mich.2004) ("[Section] 1326(b)(1) does not require or allow the full payment of Debtors' attorney fees to be delayed in favor of payments to a secured creditor, unless Debtor's counsel has agreed to such delay.").

The *Perez* court explained that the Local Rule and Procedures had been designed in

part to address an abuse created by prior practice. "Under prior procedures in the Houston Division of the Southern District of Texas, Chapter 13 plan confirmation often took many months. When the plan was eventually confirmed, the trustee usually paid the debtor's attorney's fees in full before he paid the other creditors." 339 B.R. at 407. As the court noted, "in many instances, upon the filing of the bankruptcy petition, debtors quit paying mortgage notes, in part if not in whole, in order to be able to pay the trustee, who would then distribute the funds first to pay fees of the debtors' counsel." *Id.* at 407, n. 23. The *Perez* court emphasized that the result of accepting the debtors' argument would be to forbid the trustee from making any payment to a mortgage lienholder on the debtor's principal residence until administrative claims (specifically, the debtor's attorney's fees) were paid in full or until the trustee first began to pay a portion of an allowed administrative claim. *Id.* at 408. As the court noted, this is inconsistent with section 1322(b), which requires that the rights of a home mortgage lender cannot be modified or reduced under Chapter 13. The Local Rule and Procedures prevented this by requiring payment to the mortgage lender through the trustee and allowing concurrent payment of allowed administrative claims. *Id.*

The *Perez* court reconciled the conflicting Code provisions by characterizing mortgage payments made before plan confirmation as adequate protection payments that were senior in priority to attorney's fees of debtors' counsel. As to postconfirmation payments, the court relied on the cases holding that section 1326 permits concurrent payment of secured and administrative claims. 339 B.R. at 408. "The new procedures require adequate protection payments to be made pre-confirmation and also require payment of post-petition secured claims concurrently with priority and administrative claims. Contrary to the Debtors' argument, these provisions carry out the priority provisions of, and are specifically permitted by, the Bankruptcy Code." *Id.*

The appellants' position that administrative expenses must be paid in full before the trustee can make any postpetition mortgage installment payment to a home mortgage lender rests on an interpretation of a Code provision so unclear that bankruptcy courts have divided over its meaning. The appellants' position is in direct conflict with the clear Code command to protect the rights of home mortgage lenders. The appellant's position would also frustrate the bankruptcy court's ability to curtail the abuses and inefficiencies that had resulted from the prior practice of routinely allowing direct mortgage payments, including that mortgage payments were often delayed or jettisoned in favor of first paying debtors' attorney's fees. The bankruptcy court interpreted the Code to give full effect to the express statutory command to protect the interests of the secured home mortgage lender, concluding that under section 1322(b)(2), "mortgage payments reign supreme." 339 B.R. at 408. As in *Marrama*, there is an inconsistency between an express statutory directive—to protect a mortgagee's right to receive home mortgage payments—and a general statutory provision that is unclear and subject to conflicting case law interpretations. As in *Marrama*, a bankruptcy court presented with such an inconsistency has the authority to reach a result that achieves the express Code requirement and is necessary to curtail a specific abuse of the bankruptcy process. The bankruptcy court properly concluded that the Local Rule and Procedure presumptively requiring conduit payments of home mortgage loans did not violate the Bankruptcy Code's priorities for paying administrative

claims. This conclusion does not depend on characterizing the preconfirmation mortgage payments as adequate protection payments. The bankruptcy court's conclusion that the Local Rule and Procedures did not violate the priority payment sections of the Code is affirmed.

### III. The Challenges to the Bankruptcy Court's Discretionary Decision not to Allow the Debtors to Make Direct Payments to the Mortgage Lender

██ The bankruptcy court held a hearing to address the debtors' motion for relief from the conduit payment requirement. Citing *Foster, Reid,* and *Genereux,* the bankruptcy court listed twenty-one factors that could bear on determining whether debtors should be allowed to be their own disbursement agents. *Perez,* 339 B.R. at 408–09. Those factors were:

(1) the degree of responsibility of the debtor, as evidenced by his past dealings with creditors;

(2) the reasons contributing to the debtor's need for filing a Chapter 13 petition and plan;

(3) any delays that the trustee might make in remitting the monthly payment to the targeted creditor;

(4) whether the proposed plan modifies the debt;

(5) the sophistication of the target creditor;

(6) the ability and incentive of the target creditor to monitor payments;

(7) whether the debt is a commercial or consumer debt;

(8) the ability of the debtor to reorganize absent direct payments;

(9) whether the payment can be delayed;

(10) the number of payments proposed to pay the targeted claim;

(11) whether a direct payment under the proposed plan will impair the trustee's ability to perform his standing trustee duties;

(12) unique or special circumstances of a particular case;

(13) the business acumen of the debtor;

(14) the debtor's post-filing compliance with statutory and court-imposed duties;

(15) the good faith of the debtor;

(16) the plan treatment of each creditor to which a direct payment is proposed to be made;

(17) the consent, or lack thereof, by the affected creditor to the proposed plan treatment;

(18) the ability of the trustee and the court to monitor future direct payments;

(19) the potential burden on the trustee;

(20) the possible effect upon the trustee's salary or funding of the U.S. Trustee system; and

(21) the potential for abuse of the bankruptcy system.

*Id.* at 409 (citations omitted). The court noted that the first factor is given greater emphasis under *Foster. Id.* at 409–410.

The bankruptcy court found that Mario and Maria Perez did "not demonstrate financial responsibility." *Id.* They were approximately a year delinquent on their mortgage and had failed to make their first plan payment to the trustee as proposed initially in their plan. *Id.* at 410. The court found that "[t]he Debtors' failure to make their first plan payment to the trustee also shows a lack of post-filing compliance with statutory and court imposed duties." *Id.* The bankruptcy court, while sympathizing with the debtors' hardships, found that the debtors had not demonstrated that they had the financial responsibility necessary to be allowed to serve as their own disbursing agents. The

court emphasized the past dealings with creditors and the trustee.

The debtors argued that the primary reason for their desire to make direct rather than conduit payments was to save the trustee's fee. But it is clear that avoiding the trustee's percentage fee cannot be the sole reason for allowing debtors to make home mortgage payments directly. *See, e.g., In re Reid,* 179 B.R. at 508 ("The motivation for the reaffirmation agreement appears to be to avoid the payment of the trustee's fee. In analogous cases, other courts refused to allow debtors to make periodic payments directly."); *In re Genereux,* 137 B.R. at 413 ("I am not persuaded that the Debtor's interest in avoiding the Trustee's fee outweighs the interest of debtors (and creditors) generally in an effective and efficient Chapter 13 system."). Although the bankruptcy court used the statutory maximum fee of 10% to gauge the effect of conduit payments, that is not the percentage that debtors in fact pay. The Southern District of Texas website reveals that since August 2006, the fees for the three trustees range from 6.25% for one trustee to 5.95% for the other two. *See* Southern District of Texas Forms, Fees, and Rules, *Posted Chapter 13 Trustee's Fee, at http://www.txs.uscourts.gov/ bankruptcy/rulesformsproc/ch13fee.htm* (last visited July 19, 2007). The bankruptcy court also stated that if mortgage payments were made through the trustee, the percentage fee is reduced. 339 B.R. at 415.

The bankruptcy court pointed out that the financial burden of the trustee fees could support allowing the debtors to make direct payments of their mortgage loans if other factors also weighed in favor of that result. The other factors, however, did not do so. Although the lenders were sophisticated and did not object to direct payment, the established history of poor record-keeping by both the debtors and lenders weighed heavily in favor of using the trustee as the disbursement agent, to prevent abuses of the Chapter 13 system and a large number of unnecessary disputes and motions during bankruptcy, including unnecessary risks and burdens on debtors. 339 B.R. at 413–414.

The bankruptcy court explained that under the Local Rule and Procedures, debtors could directly pay their mortgages under certain circumstances. "[I]n the Southern District of Texas, direct payments by a debtor are now the exception rather than the rule, and ... the debtor must satisfy the various elements set forth in the applicable case law to obtain approval for direct payments." *Id.* at 417. Given the facts showing the debtors' lack of financial responsibility, the bankruptcy court's decision to deny the debtors permission to serve as their own disbursing agent rather than making conduit mortgage payments through the trustee was well within the court's discretion.

## IV. Conclusion

The decision of the bankruptcy court is affirmed. This appeal will be dismissed by separate order.